497 So.2d 625 (1986)
Terry VAN ROYAL, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 66144.
Supreme Court of Florida.
September 18, 1986.
Rehearing Denied December 12, 1986.
*626 Thomas J. Donnelly, Clearwater, for appellant.
Jim Smith, Atty. Gen., and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellee.
SHAW, Justice.
Terry Van Royal, Jr., appeals his convictions of three counts of first-degree murder and sentences of death on each count. We have jurisdiction,[1] and affirm the convictions, but vacate the sentences of death and remand for entry of life sentences in accordance with section 921.141(3), Florida Statutes (1981).
On 18 June 1982, Clearwater police received a call from eight-year old Chris Fridella and dispatched several officers to his home. There, police discovered the bodies of three men lying face down on the living room floor with their hands taped behind their backs. The victims, one of whom was Chris Fridella's father, had been killed by shotgun blasts at close range. There were six wounds to the victims and six expended shotgun shells near the front door to the home. Ballistics evidence established that four shells had been fired by a .12 gauge Savage shotgun and two shells had been fired by a .12 gauge Mossberg shotgun. Three of the wounds were inflicted by the Savage and one by the Mossberg; two wounds could not be connected to a specific shotgun. Medical testimony established that all but one wound inflicted by the Savage would have been independently fatal. The child, Chris Fridella, had been bound with tape and locked in the bathroom, but was physically unharmed. The home had been burglarized and the victims' wallets emptied.
Appellant was arrested based on information that he had disclosed his participation in the crimes to a friend. Appellant acknowledged written Miranda[2] warnings and signed a waiver. Initially, he denied knowledge of the crimes but soon admitted he had participated. Appellant stated that he, Richard Cooper, and Jason Dirk Walton[3] went to the home at approximately 2 a.m. to rob the victims of money or drugs. Cooper and Walton were purportedly carrying shotguns while he carried an unloaded.30-.30 rifle. The police seized a .30-.30 rifle and a .12 gauge Mossberg shotgun belonging to appellant. Ballistics evidence established that appellant's shotgun was used in the murders.
The police also discovered that Walton's younger brother, Jeffery McCoy, had participated in the crimes. McCoy agreed to testify against appellant and pleaded guilty to three first-degree murders for which he received life imprisonment with mandatory imprisonment of twenty-five years. McCoy stated that Walton had organized the robbery/burglary which had been planned a week in advance. McCoy testified that Walton carried a .357 pistol, Cooper carried a .12 gauge Savage shotgun, appellant carried his .12 gauge Mossberg shotgun, and McCoy carried a .22 rifle. According to McCoy, there was no .30-.30 rifle present.
Appellant raises four points concerning the guilt phase of the trial, none of which have any merit. Appellant first urges that the police department knew of and condoned an improper scheme to supply him with drugs and alcohol so that he would be more likely to talk to a confidential informant. The kernel of fact on which this is based is that the police furnished *627 appellant's friend with twenty dollars so that he and appellant could spend a social night on the town during which the police planned to monitor and record the conversations between the two men. This was after the friend had told the police of appellant's admission to having participated in the crimes. The record shows, however, that the police were unable to maintain contact and that no evidence was obtained. In fact, the friend was not called as a witness during trial. We see no prejudice to the defendant by the alleged improper police conduct.
Appellant next urges that his typed statement to the police should be suppressed because the statement and his waiver of Miranda rights were not voluntarily and knowingly given. The record shows that the waiver was in writing and that after initially denying any knowledge of the crimes, appellant orally admitted that he participated in the crimes. Thereafter, he simultaneously declined to give a taped statement but agreed to give a statement to be typed by a secretary. Appellant maintains that declining to give a taped statement was an exercise of his right to remain silent and that questioning should have ceased. We see no relevant legal significance in appellant's choice of the method to be used in recording his statement.
Appellant also urges that the trial judge denied him the right to a fair trial by repeatedly urging the attorneys to move along. Appellant cites no specific instances where he was prejudiced by the trial judge's exhortations and our review of the record reveals none. We are not aware of any constitutional right to a slow trial and see no impropriety in the judge's exercising control of the trial by urging counsel to proceed with their cases.
Finally, appellant urges that his confrontation and due process rights were violated when the jury was allowed, during a brief recess, to view a series of photographs in the jury room following their introduction into evidence. The record shows that appellant did not object to the procedure until after the jury had left the courtroom and that the judge instructed the jury through a bailiff not to discuss the evidence during the recess. Moreover, the judge later inquired of the jury members whether there had been any discussion of the evidence and determined that there had not.
In addition to reviewing the specific arguments raised by appellant, we have also reviewed the record pursuant to Florida Rule of Appellate Procedure 9.140(f) and conclude that a new trial is not required.
Appellant raises numerous points concerning the penalty phase of the trial, only one of which requires discussion. The jury returned a recommendation of life imprisonment on 11 September 1984, at which time the trial judge set sentencing for 19 October 1984. At the conclusion of the sentencing hearing, the judge sentenced appellant to death for each conviction, commenting that he had never seen, or heard of, a more brutal crime. The judge did not, however, set forth in writing, or orally for the record, the reasons for imposing the death penalty as required by section 921.141(3), Florida Statutes (1981). A notice of appeal was filed on 6 November 1984, and on 15 November 1984, we directed the chief judge of the circuit to monitor the preparation of the complete record for timely filing. The record on appeal was filed with this Court on 7 March 1985, but it was not until 15 April 1985, that the trial court entered its written findings as to aggravating and mitigating factors in support of the death penalty.
Appellant argues that we lack jurisdiction to review this case because the trial court below did not enter the written findings of facts required by section 921.141(3) and urges that we remand the case to the trial court for imposition of a life sentence in accordance with section 921.141 and appellate review by the appropriate district court of appeal. We agree in part and disagree in part with appellant. First, as to jurisdiction, we are satisfied that the trial court's oral pronouncement of a death *628 sentence is sufficient to bring the case under our jurisdiction within section 921.141(4) and article V, section 3(b)(1) of the Florida Constitution. In the jurisdictional sense, this case is similar to Cave v. State, 445 So.2d 341 (Fla. 1984); Ferguson v. State, 417 So.2d 639 (Fla. 1982); and Thompson v. State, 328 So.2d 1 (Fla. 1976), where the records on appeal did not contain the separate written findings of fact on which the death sentences were based. There was no jurisdictional problem in these cases because, as here, the record on appeal showed that the trial judge had pronounced a sentence of death. These three cases differ significantly, however, in other respects from the case at hand and these differences persuade us that appellant is entitled to a vacation of sentences.
Section 921.141(3) provides in pertinent part:
In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment in accordance with s. 775.082.
The chronology of events show that more than a month elapsed between the time the jury recommended life sentences and the time the judge overrode the jury recommendation of life by orally sentencing appellant to death. Unlike Cave, Ferguson, and Thompson, the judge did not recite the findings on which the death sentences were based into the record. Moreover, the findings here were not made for an additional six months until after the record on appeal had been certified to this Court. We appreciate that the press of trial judge duties is such that written sentencing orders are often entered into the record after oral sentence has been pronounced. Provided this is done on a timely basis before the trial court loses jurisdiction, we see no problem. Here, however, there are three factors present which we consider significant. First, the findings were not made until after the trial court surrendered jurisdiction to this Court. Second, we are faced with a mandatory statutory requirement that death sentences be supported by specific findings of fact. Unlike Cave, Ferguson, and Thompson, the record on appeal is devoid of specific findings. A court's written finding of fact as to aggravating and mitigating circumstances constitutes an integral part of the court's decision; they do not merely serve to memorialize it. This is even more true when, as here, we are faced with a jury override. Without these findings this Court cannot assure itself that the trial judge based the oral sentence on a well-reasoned application of the factors set out in section 921.141(5) and (6) and in Tedder v. State, 322 So.2d 908 (Fla. 1975). Thus, the sentences are unsupported. Third, although we could order that the record be supplemented in accordance with Florida Rule of Appellate Procedure 9.200(f) as was done in Cave and Ferguson, we are not inclined to do so when the record is inadequate and not merely incomplete. See committee notes to rule 9.200.
We affirm the convictions and vacate the death sentences. The case is remanded for imposition of life sentences in accordance with section 921.141.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON and BARKETT, JJ., concur.
EHRLICH, J., concurs with an opinion.
EHRLICH, Judge, concurring.
I fully concur with the Court's opinion, but I write separately because I am concerned by the events that cause this Court to vacate the sentence of death and order the imposition of the life sentence, not on the merits of the case per se, but on the failure of the trial judge to follow the statutory requirements.
The duties and responsibilities of a trial judge with respect to sentencing of a capital *629 felony are clearly set forth in section 921.141(3), Florida Statutes (1981).
(3) FINDINGS IN SUPPORT OF SENTENCE OF DEATH  Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and
(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment in accordance with s. 775.082.
The statutory scheme enacted by the legislature has passed constitutional muster. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
The trial transcript reflects that the jury returned a recommendation of life imprisonment on September 11, 1984. Sentencing took place on October 19, 1984 and the trial judge very patiently permitted family members of the victims who were in the courtroom to express their views and sentiments and to read letters from relatives who were not present. He also permitted argument by counsel for the state and for the defendant. When all present had had their say, the trial judge asked the defendant to stand up and said:
I have been connected with the criminal justice system close to twenty-five years as a lawyer  a defense lawyer, a prosecutor and a judge. I don't recall ever seeing a crime that was more brutal or ever hearing about one. I am heartily convinced that you killed Steven Fridella. I cannot understand how the jury came to any other conclusion.
I am going to adjudicate you guilty of the charges as laid out in information no. 83-611 and sentence you to die in the electric chair.
A notice of appeal was filed by defendant on November 7, 1984.
On April 10, 1985 defendant's appellate counsel served a copy of a motion entitled "Motion to Dismiss, Motion to Vacate Death Sentence, Motion to Remand for Imposition of Life Imprisonment and Motion to Transfer" on appellee, and that motion was filed with this Court on April 15, 1985. On the latter day, the trial judge entered an order entitled "Court's Finding as to Aggravating and Mitigating Circumstances in Support of the Death Penalty" which was filed with this Court April 16, 1986.
It is within the foregoing factual and temporal sequence that the Court is called upon to review the trial court's override of a jury recommendation of life imprisonment and imposition of the death penalty.
The statutory mandate is clear. This Court speaking through Mr. Justice Adkins in the seminal case of State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), said with respect to the weighing process:
It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.
283 So.2d at 10. (emphasis supplied).
How can this Court know that the trial court's imposition of the death sentence was based on a "reasoned judgment" after weighing the aggravating and mitigating *630 circumstances when the trial judge waited almost six months after sentencing defendant to death before filing his written findings as to aggravating and mitigating circumstances in support of the death penalty? The answer to the rhetorical question is obvious and in the negative. Since the entry of this order came within a matter of days after the defendant had served his motion to dismiss and to vacate the death sentence because of the trial judge's failure to comply with section 921.141(3), Florida Statutes, it can be argued with some degree of persuasion that it was the defendant's aforesaid motion to dismiss that awakened the trial judge to the fact of his obvious dereliction and that his sentence was not the result of a weighing process or the "reasoned judgment" of the sentencing process that the statute and due process mandate. I am of the opinion that the trial court's written findings with respect to aggravating and mitigating circumstances must at least be coincident with the imposition of the death penalty. It is inconceivable to me that any meaningful weighing process can take place otherwise.
While I eschew deciding a case other than on its merits, we have no alternative. The legislature has spoken and said that "if the [trial] court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment in accordance with s. 775.082." The trial judge, for reasons not disclosed in the record, egregiously failed to perform his statutory duty in the sentencing process. We must do ours and vacate the death sentences and remand for the imposition of life sentences in accordance with section 921.141.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Cooper and Walton were tried separately. We affirmed Cooper's convictions and sentences in Cooper v. State, 492 So.2d 1059 (Fla. 1986). We affirmed Walton's convictions but reversed and remanded for resentencing in Walton v. State, 481 So.2d 1197 (Fla. 1986).