513 So.2d 1257 (1987)
Scott PATTERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 67830.
Supreme Court of Florida.
October 15, 1987.
*1258 Harry Gulkin, Ft. Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen. and Eddie J. Bell, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
The appellant, Scott Patterson, appeals his convictions for first-degree murder, sexual battery, and burglary, and his death sentence imposed by the trial judge in accordance with the jury's sentence recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm appellant's convictions but remand for a new sentencing hearing.
On June 7, 1985, at approximately 3:45 a.m., a Miramar Police Department detective *1259 proceeded to South Broward Hospital. After arriving at the hospital's emergency room, the detective interviewed Scott Patterson, the appellant. Patterson was being treated for a stab wound to the stomach and supposedly had information regarding a homicide. Patterson claimed he was visiting friends that evening and, on returning to his parents' house around 1:00 a.m., he heard unusual noises coming from his neighbor's residence across the street. According to Patterson, he viewed the silhouette of a male prowling near the neighbor's house, and he left his car and attempted to catch the prowler. Patterson stated that he chased the prowler into the neighbor's house, then outside, where he wrestled the prowler and was stabbed in the stomach. The detective relayed this information to the crime scene.
After Patterson moved from the emergency ward to a regular hospital room, the detective interviewed him again around 9:45 a.m. Patterson's mother was present and the detective taped the interview. Patterson related his earlier story about being stabbed by a prowler. Following the interview, however, the detective informed Patterson's mother that discrepancies between the two stories necessitated a third interview. These discrepancies included the fact that no knife hole existed in the T-shirt appellant claimed he was wearing when he was stabbed in the stomach, and police found blood on Patterson's shoes, though he claimed he removed them prior to chasing the prowler.
The detective interviewed Patterson a third time around 1:00 p.m. During this interview, Patterson's story changed substantially. Patterson claimed he heard noises from his neighbor's house, went to investigate, and saw a body through a bedroom window. He entered the house, attempted CPR, but decided he needed additional help. While enroute for assistance, Patterson claimed he was attacked, stabbed, and left lying in the neighbor's front yard. Confronted with the discrepancies between this version and his earlier story, Patterson confessed to the murder. After Patterson's oral admission of guilt, the detective gave Patterson his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and appellant provided the following taped account of the murder.
Patterson stated he had been drinking at a local bar and visiting with friends. When he returned home, he noticed a light on in the neighbor's residence. Patterson went inside his parents' house and obtained a kitchen knife with a long blade, then walked across the street. After circling the victim's house, Patterson entered through the victim's bedroom window. The victim was lying on her bed asleep. Patterson checked other rooms in the house, then returned to the victim's bedroom and stood over her bed. The victim awoke and Patterson, with the knife in his hand, conveyed the message that he wanted to have sex. The victim started to comply, then grabbed the knife, which Patterson had placed on the bed, and stabbed appellant in the abdomen. A struggle ensued, but Patterson eventually retrieved the knife, placed a pillow over the victim's face, and stabbed her repeatedly in the chest and neck. After the killing, Patterson placed his T-shirt, which he had removed, and the knife in the leg of one of the victim's pants. Patterson returned to his parents' house and hid the bundle under a chair. Patterson then woke his father, told him that he had been stabbed by a burglar, and requested that he be taken to the hospital. While enroute to the hospital, appellant's father waved down a police officer, who escorted them to the emergency room. In the emergency room, Patterson told the officer that he was stabbed attempting to apprehend a burglar crawling through his neighbor's window. While relaying this information to the crime scene, the officer learned that a murder had occurred. Officials advised the officer not to lose contact with appellant, and the detective was summoned to the hospital.
The jury convicted Patterson of first-degree murder, sexual battery, and burglary. During the sentencing phase, the state presented no witnesses and Patterson's mother provided the only testimony for the defense. The jury, by a seven-to-five vote, *1260 recommended the death penalty. Prior to sentencing, the trial judge received a presentence investigation report that recommended a life sentence. In the sentencing proceeding before the judge, testimony was presented by the victim's niece, who was caring for the victim's two children, and by Patterson's mother. The judge imposed the death sentence, stating that the aggravating circumstances outweighed the mitigating circumstances, and commented that Patterson showed "little or no remorse." The judge's statement, made in open court, did not articulate or explain the specific aggravating or mitigating circumstances, but merely summarized the sentencing factors as they were presented to the jury. The trial judge then directed the state attorney to prepare the sentencing order. The sentencing order, as prepared by the state attorney and signed by the trial judge, found three aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the capital felony was committed while the defendant was committing a burglary; and (3) the capital felony was especially heinous, atrocious, and cruel. In mitigation, the order found that Patterson had no significant history of prior criminal activity.

Guilt Phase
Patterson raises three issues in the guilt phase of his trial. He contends (1) the trial court erred in admitting his confession; (2) admission of certain photographs inflamed the jury and denied him a fair trial; and (3) that voluntary intoxication prevented him from formulating the specific intent necessary for first-degree murder and sexual battery.
With regard to the first claim, Patterson argues the trial court erred by denying his motion to suppress the confession because the state took advantage of his weakened physical condition and used undue influence to procure a confession. We reject the contention that the statements and confession are involuntary as a matter of law. There were no threats of violence or direct or implied promises. The record reflects that after interviewing Patterson for the second time, the detective felt the discrepancies in appellant's first two stories necessitated a third interview. During this third interview, appellant was unable to explain the differences in his earlier versions of the events and confessed to the murder. We approve the holding in State v. Williams, 386 So.2d 27 (Fla. 2d DCA 1980), that
a confession may not be excluded merely because it was made under excitement or mental disturbance not induced by extraneous pressure, but which arose from apprehension due to the situation in which the accused found himself.
Id. at 29. Clearly, the apprehension brought about by Patterson's own conduct does not justify a finding that the statements were involuntary. Further, prior to taping appellant's confession, the detective read appellant his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Patterson indicated he understood these rights and signed a waiver of rights form. We find no basis to hold Patterson's confession involuntary, and find it constitutionally admissible.
Patterson claims in his second point that the trial court erred by permitting the prosecution to introduce graphic color photographs of the decedent into evidence. Patterson argues the gruesome nature of these photographs inflamed the jury and unfairly prejudiced appellant. Clearly, the admission of photographic evidence is within the trial court's discretion and should not be disturbed unless there is a clear showing of abuse. Wilson v. State, 436 So.2d 908, 910 (Fla. 1983). The photographs were introduced during a medical examiner's testimony and depicted the victim's body in relation to the crime scene. The test for admissibility is relevance, and the record reflects sufficient evidence to support the trial judge's determination. See Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984); Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981).
*1261 In his third point, Patterson argues that the trial court should have reduced his first-degree murder charge to second-degree murder based on his claim of voluntary intoxication. We reject this contention. There was conflicting evidence on the extent of Patterson's intoxication. Patterson presented evidence that he had been drinking substantially on the night of the murder. On the other hand, testimony by the prosecution indicated that despite his drinking Patterson had the capacity to plan, to make decisions, and to act accordingly. The effect of Patterson's use of intoxicants on the night of this incident was a fact question for the jury. What Patterson is asking this Court to do is reweigh the evidence, which would clearly be improper.

Sentencing Phase
In the sentencing phase, Patterson claims the trial court (1) improperly delegated a judicial function by requesting the state attorney to prepare the sentencing order and (2) erred by considering unauthorized aggravating factors and by failing to consider nonstatutory mitigating circumstances during sentencing.[*]
With regard to his first contention, we find that the trial judge improperly delegated to the state attorney the responsibility to prepare the sentencing order, because the judge did not, before directing preparation of the order, independently determine the specific aggravating and mitigating circumstances that applied in the case. Section 921.141, Florida Statutes (1985), requires a trial judge to independently weigh the aggravating and mitigating circumstances to determine whether the death penalty or a sentence of life imprisonment should be imposed upon a defendant. Explaining the trial judge's serious responsibility, we emphasized, in State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974):
[T]he trial judge actually determines the sentence to be imposed  guided by, but not bound by, the findings of the jury. To a layman, no capital crime might appear to be less than heinous, but a trial judge with experience in the facts of criminality possesses the requisite knowledge to balance the facts of the case against the standard criminal activity which can only be developed by involvement with the trials of numerous defendants. Thus the inflamed emotions of jurors can no longer sentence a man to die... .
The fourth step required by Fla. Stat. § 921.141, F.S.A., is that the trial judge justifies his sentence of death in writing, to provide the opportunity for meaningful review by this Court. Discrimination or capriciousness cannot stand where reason is required, and this is an important element added for the protection of the convicted defendant.
Id. at 8.
Subsequent to the trial of this case, we addressed this statutory requirement in three recent cases. Nibert v. State, 508 So.2d 1 (Fla. 1987); Muehleman v. State, 503 So.2d 310 (Fla. 1987); Van Royal v. State, 497 So.2d 625 (Fla. 1986). In Van Royal, the trial court imposed the death sentence but provided no sentencing findings until after this Court had jurisdiction and had received the complete record on appeal. We held the statutory requirement that death sentences be supported by specific findings of fact controlled and concluded, because the record on appeal in that case was devoid of any specific findings at the time it was filed, that a life sentence was mandated. In a concurring opinion, Justice Ehrlich stated that "the trial court's written findings with respect to aggravating and mitigating circumstances must at least be coincident with the imposition of the death penalty. It is inconceivable ... that any meaningful weighing process can take place otherwise." 497 So.2d at 630. In Muehlman, we vigorously stressed that written findings should be *1262 prepared contemporaneously with the imposition of sentence, but did not impose a life sentence because "the written findings followed the jury's recommendation of death, and were filed two and one-half months after sentencing, two months prior to the certification of the record to this Court." 503 So.2d at 317. In Nibert, we addressed a claim that the trial court instructed the state attorney to prepare the sentencing order. In that case, however, we found that "[t]he record reflects that the trial judge made the findings and conducted the weighing process necessary to satisfy the requirements of section 921.141, Florida Statutes (1985)." 508 So.2d at 3-4. Further, that although the judge instructed the state attorney to reduce his findings to writing, defense counsel did not object. Again, we strongly urged trial courts to prepare their own written statements of the findings in support of the death penalty, commenting that the failure to do so does not constitute reversible error "so long as the record reflects that the trial judge made the requisite findings at the sentencing hearing." Id. at 4. In the instant case, the trial judge at this sentencing hearing stated:
This Court heard again today arguments of counsel. This Court is taking into consideration all the facts that I recall of the trial, itself, as well as the notes that I have taken, as well as the benefit of counsel having gone over it. It is the law of this land, the law of this State, that the aggravating circumstances and the mitigating circumstances should be presented to a jury, and as to those circumstances they were argued by the attorneys and submitted to that jury. After that argument that jury, a jury of your peers, by the 7/5 vote indicated the aggravating circumstances were outweighing and greater than the mitigating circumstances. This court affirms their findings in that regard. It is the feeling of this Court the aggravating circumstances having outweighed the mitigating circumstances, that that is the application this Court should take to the determination of sentence. Based upon that opinion, based upon the testimony, based upon the mitigating circumstances and the circumstances that were found by that jury, based upon the opinions, the facts, based upon the aggravating circumstances that occurred during the course of the trial reflecting back on the scene, itself, replenting [sic] back on the incident, itself, this Court has gone over the record with regard to it, it would appear and did appear to this Court that you had been in a position of feeling little or no remorse during the course of the trial. There was an indication that there was an expression of it afterwards, but I saw none otherwise. I recall the testimony in particular of the doctor, the coroner, that these wounds in and of themself, none of which would have been sufficient to have been fatal, and probably if they had stopped or ceased after the first group of wounds, that the deceased, would not be deceased, that she would be here today... .
... .
At any rate, this Court having considered the factors that are summarized by that jury, the mitigating and the aggravating factors, and based upon these mitigating and aggravating circumstances, and being of the opinion that insufficient mitigating circumstances exist to outweigh the aggravating, it's going to be the sentence of this Court that you, Scott Patterson, be sentenced to death for the murder of the victim. I am going to ask that the state attorney prepare an order of sentence and keeping with the one that was made as to the jury in their mitigation or in their trial concerning the penalties. This court is going to as to Count I, as I said, find you guilty and sentence you to death.
This record, contrary to Nibert, does not demonstrate that the judge articulated specific aggravating and mitigating circumstances. On the contrary, the trial judge's action in delegating to the state attorney the responsibility to identify and explain the appropriate aggravating and mitigating factors raises a serious question concerning the weighing process that must be conducted before imposing a death penalty. It *1263 is insufficient to state generally that the aggravating circumstances that occurred in the course of the trial outweigh the mitigating circumstances that were presented to the jury. It is our view that the judge must specifically identify and explain the applicable aggravating and mitigating circumstances.
There are two other errors in this sentencing proceeding. First, this record reflects the trial judge used "lack of remorse" as an aggravating factor in his determination to impose the death penalty. In Pope v. State, 441 So.2d 1073 (Fla. 1983), we held:
[H]enceforth lack of remorse should have no place in the consideration of aggravating factors. Any convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor.
Id. at 1078 (emphasis added).
In addition, although Patterson did not raise this error, we find that utilizing the contemporaneous conviction of armed sexual battery as the basis for the aggravating circumstance that Patterson had previously been convicted of another violent felony is error under our recent decision in Wasko v. State, 505 So.2d 1314 (Fla. 1987). In Wasko, we found it improper to use the contemporaneous conviction of attempted sexual battery upon the murder victim as an aggravating circumstance of a prior conviction of a violent felony. We recede from Hardwick v. State, 461 So.2d 79 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985), to the extent that it conflicts with our Wasko decision. We note that the sentencing order drawn by the state attorney in this case relied upon Hardwick.
Further, the record reflects that the victim's niece who had responsibility for the victim's children after her death, testified at the sentencing hearing before the judge alone concerning the effect of the victim's death on the children and expressed her opinion that the death penalty was appropriate. Allowing this type of evidence in aggravation appears to be reversible error in view of the United States Supreme Court decision in Booth v. Maryland, ___ U.S. ___, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
We conclude that Van Royal does not require us to impose a life sentence under the circumstances of this case, where we have received an erroneous sentencing order as part of the record on appeal. We find that this sentencing order must be vacated and a new sentencing hearing before the judge must be held for consideration of the appropriate aggravating and mitigating circumstances. In considering the aggravating and mitigating circumstances, we caution the judge not to utilize lack of remorse or the emotional distress of the victim's family in the weighing process. Further, in balancing the facts of this case against other criminal activity, that he examine our recent decision in Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986).
We affirm appellant's convictions and sentences except the sentence of death for first-degree murder and, for the reasons expressed, remand for a new sentencing hearing before the trial judge.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[*] We note the record reflects that appellant was nineteen years of age at the time of this offense and was married but separated from his wife and child; also, evidence was presented that he was intoxicated at the time of the offense.