537 So.2d 988 (1989)
Arthur Lynn SCHAFER, Appellant,
v.
STATE of Florida, Appellee.
No. 70834.
Supreme Court of Florida.
January 19, 1989.
Rehearing Denied March 2, 1989.
*989 Michael D. Gelety, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen. and Alfonso M. Saldana, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Arthur Lynn Schafer appeals his convictions for first-degree murder and robbery and the imposition of a sentence of death in accordance with a jury recommendation.[1] We affirm his convictions and his sentence for robbery. However, we must remand for resentencing of the first-degree murder conviction because of the improper use of three aggravating circumstances.
The bound and gagged body of an eighty-six-year-old woman was found in her ransacked apartment by neighbors on May 24, 1986. The victim died from asphyxiation through strangulation and had suffered bruises and contusions on her head and neck. Residents of the apartment complex told investigators they had seen a man in the vicinity of the victim's apartment earlier on the day of the crime. The man had gone to other apartments in the complex trying to gain entry under the guise of being a telephone repairman. An employee at the complex and a resident identified appellant, Arthur Lynn Schafer, as the man whom they had seen. The employee knew Schafer because he had been with him on approximately twenty prior occasions.
After the identification, investigators asked Schafer to come to the police station to be interviewed about the crime. The investigating detective stated that, although Miranda[2] rights were not given since Schafer was not under arrest, he was informed of the investigation, instructed that he did not have to speak with the detectives, and that he was free to leave. Schafer was advised that two people had tentatively identified him as being inside the apartment complex on the day of the homicide and was questioned concerning his whereabouts on that day. One of the investigating detectives testified he felt that the witnesses who identified Schafer could have been mistaken about their identification or lying. Also, at that time, one of the individuals who identified Schafer had not yet been eliminated as a possible suspect, partly because of that person's confusing statements to the police. Schafer denied any presence at the apartment complex on the day of the murder and indicated his willingness to take a lie detector test to prove that fact. He was advised he did not have to take the test.
Two investigators brought Schafer to the Broward County sheriff's office to take the polygraph examination approximately two and one-half hours after he had first entered the police station. The investigating officers testified during the motion to suppress hearing that they were seated in the front seat of the car while Schafer sat alone in the back seat, not handcuffed. *990 This conflicted with Schafer's assertion that he was handcuffed. Before the polygraph examination, a detective read Schafer a form to ensure he understood that his statements were being given freely and voluntarily. During the course of the polygraph examination, Schafer was advised of negative reactions to certain investigative questions and told that he had not cleared the test and if he was the person it was just a matter of time before the truth would be known. Schafer responded that he might as well get it off his chest and confessed to the murder but stated he did not mean to kill the victim. At that point, the polygraph examiner stopped him and read him his constitutional rights from a prepared form. Schafer was instructed as to the following:
(1) He had the right to remain silent. He need not talk to [the investigator] or answer any questions if he did not wish to do so; (2) should he talk to [the investigator], anything which he would say could and would be introduced into evidence against him; (3) if he wanted an attorney to represent him at this time or at any time during questioning he was entitled to such counsel; (4) if he could not afford an attorney and so desired, one would be provided without charge.
Schafer responded affirmatively to the detective's query about whether he understood each right and initialed each right on the form. He then made a full confession, in which he said he panicked when the victim caught him burglarizing her home. The motion to suppress Schafer's statements and confession was denied by the trial court which found the statements were voluntarily made and Schafer was not in custody at the time of the polygraph examination.
Additional evidence at trial indicated that Schafer and his girlfriend had consumed a substantial amount of cocaine the evening before the murder. Testimony was adduced by Schafer's counsel on cross-examination from Schafer's girlfriend that Schafer became violent while under the influence of alcohol or drugs. Evidence was also presented by the defense that Schafer had previously received psychiatric treatment when he was in high school and later at a Veterans Administration hospital. In the guilt phase, the theory of the defense was that Schafer had panicked and the evidence did not show that Schafer had the specific intent to commit first-degree premeditated murder or even the specific intent to commit robbery. The jury apparently rejected this defense, finding Schafer guilty of first-degree murder and robbery as charged in the information.
In the penalty phase, Schafer's primary argument to the jury was that he had substantial mental problems which represented a major mitigating factor that warranted the imposition of a life sentence. The jury disagreed and recommended imposition of the death penalty by a vote of ten to two.
The trial judge imposed the death sentence for the first-degree murder conviction, finding five aggravating and no mitigating circumstances.

Guilt Phase
Schafer raises three issues in the guilt phase of his trial. He contends: (1) the trial court erred in failing to suppress the statements he made to the police; (2) his right to a fair trial was destroyed by prosecutorial misconduct in bringing out other incidents of violence; and (3) the cumulative effect of various errors, including errors in instructions, violated his right to a fair trial.
We find no merit in the first claim that the trial court erred in failing to suppress Schafer's statements to the police. We find the trial judge properly concluded that Schafer was not arrested or in custody at the time of the polygraph examination, that he was not the only suspect, that he was instructed he did not have to talk, and that he was told he was free to leave. The record establishes that Schafer was invited to the police station for questioning by investigating officers pursuing leads associated with the crime. The record is sufficient to support a finding that Schafer voluntarily came to the police station and two hours later indicated his willingness to take a lie detector test to prove he was not at the complex on the day of the crime.
*991 The circumstances are sufficient to justify a finding by the trial court that Schafer's initial interrogation was not custodial, that his statements were voluntarily made, and that he was not handcuffed during the ride to the sheriff's department. It is evident that this confession was precipitated by the results of the polygraph examination which Schafer himself sought. In Patterson v. State, 513 So.2d 1257 (Fla. 1987), we addressed a related issue of whether a defendant was in custody at the time of his statements. In that case, the defendant was interviewed on three separate occasions, the last because of discrepancies in his first two interviews. In the last interview he admitted his presence at the scene and generally admitted the crime. The investigating detective then gave him his Miranda rights and obtained a full confession, which we found admissible. In our view, the circumstances of the instant case are similar and do not support a finding that the statements made before the polygraph exam were a violation of Miranda. Our decision in Patterson is analogous and is authority for our holding that Schafer's confession is admissible. Apprehension brought about by Schafer's own request of the polygraph exam does not justify a finding that the statements made before the Miranda warnings were involuntary.
In his second claim, Schafer alleges that his right to a fair trial was destroyed by prosecutorial misconduct, particularly the examination of the appellant's girlfriend about Schafer's violent conduct induced by alcohol or drugs. It is important to note that the subject was initially raised by Schafer's attorney in an attempt to demonstrate that Schafer was a different person while under the influence of drugs and alcohol and that on this occasion he did not have the specific intent to commit first-degree murder. We find all the contentions in this claim without merit.
We also reject Schafer's third claim that various errors had the cumulative effect of violating his right to a fair trial. We do find that the instruction on flight, to which Schafer's counsel objected, was clearly erroneous, but, under the circumstances of this record, we find it was harmless.
We conclude from our full examination of this record that the evidence was sufficient to convict Schafer of first-degree murder and robbery.

Sentencing Phase
In imposing the death sentence, the trial court found the following aggravating circumstances: (1) appellant had been convicted of a prior violent felony (the contemporaneous robbery); (2) the murder was committed during the course of a robbery and a burglary; (3) the murder was committed to avoid arrest; (4) the murder was particularly heinous, atrocious, and cruel; and (5) the murder was committed in a cold, calculated, and premeditated manner. The trial court found no mitigating circumstances. Schafer contends that only the second aggravating circumstance is sustainable on this record. We find the evidence sustains the applicability of both the second and fourth aggravating circumstances, but we agree with Schafer that the first, third, and fifth aggravating circumstances were improperly found. As conceded by the state, the utilization of a contemporaneous felony committed upon the same victim is improper under our decisions in Patterson and Wasko v. State, 505 So.2d 1314 (Fla. 1987). Further, the record fails to support a finding that the murder was committed to avoid arrest. See, e.g., Riley v. State, 366 So.2d 19 (Fla. 1978).
Finally, we also agree that this record does not support a finding that the murder was committed in a cold, calculated, and premeditated manner. There was no evidence to illustrate any prior calculation or prearranged plan or design. We have previously explained the elements necessary for this aggravating circumstance in Smith v. State, 515 So.2d 182 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1249, 99 L.Ed.2d 447 (1988); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988); Herring v. State, 501 So.2d 1279 (Fla. 1986).
*992 Because the trial court utilized three improper aggravating circumstances, we are unable to approve the imposition of the death penalty, and we find that a new sentencing hearing must be held before the trial judge.
Accordingly, for the reasons expressed, we affirm Schafer's convictions and his sentence for robbery but vacate the sentence of death and remand for a new sentencing hearing before the trial judge.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).