573 So.2d 284 (1990)
Rudolph HOLTON, Appellant,
v.
STATE of Florida, Appellee.
No. 69861.
Supreme Court of Florida.
September 27, 1990.
As Clarified on Partial Grant of Rehearing January 15, 1991.
*285 James Marion Moorman, Public Defender and Douglas S. Connor, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
*286 Robert A. Butterworth, Atty. Gen. and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellee.

CORRECTED OPINION
PER CURIAM.
Rudolph Holton appeals his conviction for first-degree murder and sentence of death. He also challenges his convictions and sentences for first-degree arson and sexual battery. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Holton's convictions and the imposition of the death penalty but remand to the trial court as to the sentences imposed for arson and sexual battery.
On June 23, 1986, the unclothed, partially charred body of Katrina Graddy was found in a burning vacant house. Pieces of a nylon cloth were tied around her neck and around one wrist. The neck of a glass bottle was partially inserted in her anus. Tests for sperm in the victim's bodily orifices were all negative. It was determined that the fire was started intentionally, but the cause of death was strangulation.
Following the discovery of the victim's body, police questioned Carl Schenck, who had been asleep in his truck parked directly across from the burning house. Schenck told investigators he had parked there at about 10:00 or 11:00 p.m. the night before. He had been waiting for the return of a hitchhiker he had picked up earlier in the day while the hitchhiker went to purchase some marijuana. Schenck fell asleep and eventually was awakened by the fire engines. A black shaving bag left by the hitchhiker in Schenck's vehicle was taken as evidence. Schenck was unable to make a positive identification of Holton from photographs or at trial, but said Holton closely resembled the hitchhiker.
Johnny Lee Newsome testified that on the night of the murder, he saw Holton and the victim at about 11:00 p.m. talking outside the vacant house where the victim's body was found. Newsome said Holton was holding a black shaving bag. Another witness, Flemnie Birkins, who had known Holton for a number of years and was serving time in the county jail when Holton was arrested, testified that Holton told him "he had killed a girl, that he had strangled her" and then set fire to the house. Birkins also stated that Holton claimed he did not mean to kill the girl. A third witness claimed that, around 11:00 p.m. on the night of the murder, she saw Holton enter the vacant house where the homicide occurred.
When questioned by investigators, Holton claimed he was at home at the time of the murder.[1] He said he had not been to the vacant house for ten days. When told that his fingerprint had been found on the wrapper of an empty pack of cigarettes removed from a room in the house, Holton admitted he had been shooting drugs in the house several days before the homicide occurred but denied being near the house on the night of the murder. Photographs were taken of Holton depicting scratches on his chest and a cut on his finger.
The jury returned verdicts of guilty for premeditated murder, sexual battery with great force, and first-degree arson. By a vote of seven to five, the jury recommended a sentence of death. The judge found four aggravating factors[2] and no statutory mitigating factors. As nonstatutory mitigating circumstances, the trial court considered that Holton has two children and is a drug addict. Holton was sentenced to death for the murder of Katrina Graddy and given consecutive sentences of life imprisonment for the sexual battery *287 conviction and thirty years' imprisonment for the arson conviction.
As his first issue, Holton argues that the state exercised three peremptory challenges to systematically exclude prospective black jurors from the jury panel. In State v. Neil, 457 So.2d 481 (Fla. 1984), we established a test for determining whether an opposing party's peremptory challenges have been exercised improperly to excuse prospective jurors. The complaining party must make a timely objection, demonstrate on the record that the challenged persons are members of a distinct racial group, and show that there is a strong likelihood these persons have been challenged because of impermissible bias. Neil, 457 So.2d at 486. In State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), we extended the principles set forth in Neil and held that any doubt as to whether the complaining party has met the initial burden required under Neil should be resolved in that party's favor. Once this burden has been met, the burden shifts to the state to demonstrate that the proffered reasons are, first neutral and reasonable and, second, not a pretext. Slappy, 522 So.2d at 22.
During jury selection, defense counsel timely objected on two separate occasions to the exclusion of prospective black jurors. The record shows that following the questioning of the first group of prospective jurors, the state exercised two peremptory challenges. After objecting, defense counsel explained that each peremptory had been used to exclude the only two blacks on the panel. Counsel then stated her belief that the state was systematically excluding blacks from the jury. The trial court overruled the objection without an inquiry because the two prospective jurors had expressed opposition to the death penalty, which the trial court deemed a sufficient reason for the challenges.
The record clearly supports the trial court's ruling. When asked whether he could recommend the death penalty in an appropriate case, the first black individual expressed his reservations about the death penalty because of his belief that death sentences are imposed disproportionately on the basis of race. When asked the same question, the second prospective black juror stated that she was opposed to capital punishment under any circumstances. While defense counsel met the first two prongs of the Neil test, counsel was unable to demonstrate a strong likelihood that the two prospective jurors were challenged solely because of their race. Ambivalence toward recommending a sentence of death and opposition to the death penalty are race-neutral and acceptable grounds for excusing a prospective juror. We find the record supports the trial court's ruling.
When defense counsel objected to the state's exercise of a peremptory challenge to exclude a third prospective black juror, the trial court asked the state for reasons to support the challenge. The state explained it was concerned that the prospective juror, based upon her answers during voir dire, would not be sympathetic toward the victim because she was a prostitute. The state believed the prospective juror might believe the victim was in some way responsible for what had occurred because the victim had been a prostitute. The trial court accepted the state's explanation and noted defense counsel's objection.
The record reflects that defense counsel satisfied its initial burden by demonstrating that the prospective juror was a member of a distinct racial group and that there was a likelihood the challenge resulted from an impermissible bias. When questioned by the trial court, the reason proffered by the state to support the challenge was race-neutral, and one could reasonably conclude that the prospective juror could not be sympathetic toward a prostitute. Therefore, we find that the state did not exercise peremptory challenges to exclude blacks improperly from the jury.
As his second issue, Holton contends that the state's cross-examination of Detective Childers, who participated in the investigation of the murder, was prejudicial because it misled the jury. Detective Childers was questioned following the testimony of Flemnie Birkins, a witness for the state to whom Holton made a jail-house *288 confession. Holton claims it was error for the state to ask Detective Childers whether Birkins was able to tell investigators facts concerning the murder that only the murderer would know. Holton argues that by asking this question the state led the jury to believe that Detective Childers had access to evidence not produced at trial that confirmed Birkins' testimony and proved Holton's guilt.
The record reflects that when the state first posed this question, defense counsel lodged an objection which was sustained by the trial court. Detective Childers was asked this question a second time in response to defense counsel's redirect questioning of him concerning whether there had been television coverage of the murder after it occurred. Although defense counsel did not object, the trial court interjected and the question was never answered. Accordingly, we find no error and note defense counsel's redirect questioning of Detective Childers "opened the door" to the question posed by the state on cross-examination.
Holton also objects to the state's questioning of Detective Durkin. Specifically, Holton contends that it was improper for the state to ask Detective Durkin whether any homicides had occurred since Holton's arrest involving a victim who had been raped, strangled and burned. Holton argues that this question was prejudicial because it suggested that other similar homicides had been committed prior to Holton's arrest but that none had occurred after his arrest.
Our review of the record reveals that defense counsel opened the door to this line of questioning. During cross-examination of state's witness Johnny Lee Newsome, defense counsel questioned Newsome regarding another homicide in which he was a witness. Newsome was asked whether that particular murder involved a victim who was found in a burning vacant house. Defense counsel's questions also inferred that Newsome may have committed that murder and therefore could have committed the murder in this case. It was not error for the state to question Detective Durkin about similar homicides to rebut the inferences raised by the defense.
As his fourth issue, Holton claims that he was denied a fair trial because of improper prejudicial comments during the state's closing argument. Holton cites several comments by the prosecutor that he believes require reversal of his conviction. However, most of the comments were not preserved for appeal by timely objection in the trial court. We agree that Holton has waived any right to appeal these remarks. See Wilson v. State, 294 So.2d 327 (Fla. 1974). Two other comments were the subject of timely defense objections, but Holton later failed to move for mistrial.
The state notes that, in Clark v. State, 363 So.2d 331, 335 (Fla. 1978), receded from on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), this Court held that for an objection to a prosecutor's comment to be preserved for appeal, the objection must be followed by a motion for mistrial. However, we believe this rule to be purposeless where, as here, the objection is overruled. The objection itself calls the court's attention to the error alleged to have prejudiced the party making the objection and to the possibility that a mistrial may be in order.[3]Simpson v. State, 418 So.2d 984, 986 (Fla. 1982), cert. denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983). We thus proceed to the merits of the issue.
The first objection was to negative comments by the prosecutor on Holton's courtroom demeanor and remarks that a drawing penned by Holton during a police interview was the product of a "twisted mind." An objection was made to a second comment by the prosecutor regarding the testimony that no similar crime had been committed since Holton's arrest. We agree that the prosecutor's arguments slightly exceeded the bounds of fair comment. While a prosecutor certainly must argue *289 the state's case zealously, the zeal must be curbed when it pushes the argument into speculation and innuendo. See Stewart v. State, 51 So.2d 494, 495 (Fla. 1951). However, we agree that the error committed here was minor compared to that in Stewart, where the prosecutor indulged in gross speculation about future crimes the defendant might commit against children. Id. at 494. Here, we believe the state's comments at most warranted a mild rebuke from the trial court. In light of the entire record, we find the error harmless beyond a reasonable doubt. DiGuilio.
Next, we turn to Holton's argument that the trial court erred in not granting a continuance until a key defense witness could be located to testify. He claims that the witness' testimony was essential for a fair trial. Our review of the record discloses that defense counsel was aware that the witness had failed to appear on the first day of the trial. Yet it was not until the morning defense counsel was to present her case, three days after the trial had begun, that counsel informed the trial court that she had been unable to secure the presence of the witness. Moreover, on the suggestion of the trial court, the parties eventually agreed to summarize the witness' deposition for presentation to the jury.[4] Both the defendant and the state were involved extensively in the preparation of the statement. For these reasons, we find no error in the trial court's denial of the motion for continuance.
We now address Holton's claim that the evidence at trial was insufficient to support a conviction for premeditated first-degree murder. Holton argues that because Flemnie Birkins testified that Holton said he did not mean to kill the victim, the murder was accidental and not premeditated.
Premeditation can be shown by circumstantial evidence. Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), overruled on other grounds, Pope v. State, 441 So.2d 1073 (Fla. 1983). However, to prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence. Cochran v. State, 547 So.2d 928, 930 (Fla. 1989); McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). Thus, when attempting to establish premeditation by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference that could be drawn. Cochran, 547 So.2d at 930; Wilson v. State, 493 So.2d 1019, 1022 (Fla. 1986). Whether the state's evidence fails to exclude all reasonable hypotheses of innocence is a question of fact for the jury. Cochran, 547 So.2d at 930. If there is substantial competent evidence to support the jury verdict, the verdict will not be reversed. Id. As this Court stated in Larry v. State, 104 So.2d 352, 354 (Fla. 1958):
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned.
Applying these principles to the circumstances of this case, we find there was sufficient evidence from which the jury could have inferred premeditation to the exclusion of all other possible inferences, including accidental death. The victim was found with a ligature secured tightly around her neck. Death was caused by strangulation. The victim had long finger-nails, and photographs of Holton taken the day after the murder showed fresh scratch marks on Holton's chest, suggesting a struggle. Setting the vacant house on fire to dispose of the body was an attempt to cover up the incident. Holton also made *290 exculpatory statements when questioned by police detectives. Because the circumstantial evidence standard does not require the jury to believe the defense version of facts on which the state has produced conflicting evidence, Cochran, 547 So.2d at 930, the jury properly could have concluded that Holton's version of the facts was untrue. We find there was substantial competent evidence to support the jury verdict that the murder was premeditated.
As his next issue, Holton claims the evidence at trial was insufficient to support a conviction for first-degree arson. He correctly points out that an element of first-degree arson requires that the structure be occupied by a human being. However, even though the medical examiner testified that the victim's death occurred before the fire was set, the jury reasonably could have inferred from all of the evidence that Holton believed the victim was alive at the time the fire was set.
Holton also challenges his conviction for sexual battery with great force. This challenge is based on two grounds. The first centers on Holton's belief that the use of the word "person" in section 794.011(3), Florida Statutes (1985),[5] contemplates that the victim of sexual battery must be alive. Holton argues, therefore, that because the evidence could not conclusively establish the bottle was inserted in the victim's anus before death but could only prove that insertion occurred prior to the fire, the evidence was insufficient to support his conviction under section 794.011. Second, Holton charges that because the victim was a prostitute, it is reasonable to conclude that she consented to the penetration.
Again, we are persuaded that the jury could have believed that Holton thought the victim was alive at the time he initiated the sexual battery. Under the facts of this case, we find there was substantial, competent evidence to support Holton's conviction for sexual battery with great force. "Once competent, substantial evidence has been submitted on each element of the crime, it is for the jury to evaluate the evidence and the credibility of the witnesses." Hufham v. State, 400 So.2d 133, 135-36 (Fla. 5th DCA 1981) (citing State v. Smith, 249 So.2d 16 (Fla. 1971)). Factual conflicts are to be resolved by the jury. State v. Smith, 249 So.2d at 17. The concern on appeal is whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict, there is substantial competent evidence to support the verdict and judgment. Tibbs v. State, 397 So.2d 1120 (Fla. 1981). The evidence was sufficient to support Holton's sexual battery conviction.
We disagree with Holton's assertion that the trial court erroneously denied his request to instruct the jury on unnatural and lascivious act, section 800.02, Florida Statutes (1985), as a lesser included offense of sexual battery with great force, section 794.011(3), Florida Statutes (1985). There was no error because section 800.02 is not a necessarily lesser included offense of section 794.011(3).
Next, Holton argues that his sentences for sexual battery and arson must be vacated because a guidelines scoresheet was not prepared. Rule 3.701(d)(1), Florida Rules of Criminal Procedure, provides:
One guideline scoresheet shall be utilized for each defendant covering all offenses pending before the court for sentencing. The state attorney's office will prepare the scoresheets and present them to defense counsel for review as to accuracy in all cases unless the judge directs otherwise. The sentencing judge shall approve all scoresheets.
Thus, rule 3.701(d)(1) mandates that a sentence be imposed based on a sentencing *291 guidelines scoresheet that has been reviewed by the trial judge. See, e.g., Brooks v. State, 505 So.2d 639 (Fla. 1st DCA 1987); Sanchez v. State, 480 So.2d 704 (Fla. 3d DCA 1985); Barr v. State, 474 So.2d 417 (Fla. 2d DCA 1985). Therefore, we vacate Holton's sentences for sexual battery and arson and remand for resentencing after a guidelines scoresheet has been prepared and considered by the trial judge.
Holton also claims that the state rather than the trial judge was responsible for preparing the written findings of fact in support of the death penalty. The record, however, does not support this contention.
Holton further argues that his death sentence should be overturned because the sentence was imposed on December 5, 1986, but the trial judge's written findings are dated February 12, 1987, some two months following sentencing and after certification of the record on February 6, 1987. In Van Royal v. State, 497 So.2d 625 (Fla. 1986), this Court emphasized the necessity of entering written sentencing orders on a timely basis. In doing so, we stated that entering the written sentencing order after oral pronouncement of sentence was acceptable provided the order was filed before the trial court loses jurisdiction. Later, in Grossman v. State, 525 So.2d 833, 841 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), we found it necessary to establish a procedural rule requiring that prior to or contemporaneously with an oral pronouncement imposing the death penalty, the trial court must prepare its written sentencing order to be filed concurrent with the pronouncement. The rule was established even though we recognized that many trial courts in other cases had not had the benefit of Van Royal and its progeny. Id. Therefore, under certain circumstances we allowed some leeway regarding the filing requirement in cases in which the sentencing proceeding occurred before our decision in Grossman. Stewart v. State, 549 So.2d 171, 176 (Fla. 1989) (remand for written findings when sentencing proceeding occurred before Grossman and trial court followed jury recommendation of death and dictated findings into the record).
Since the sentencing proceeding in Holton's case took place prior to our decision in Grossman, the actions of the trial court should be viewed in light of the standards established in the Van Royal line of cases. In Muehleman v. State, 503 So.2d 310, 317 (Fla. 1987), we permitted Muehleman's death sentence to stand even though the written findings were filed two and one-half months after sentencing but prior to certification of the record to this Court. Holton claims, however, that in his case the written findings were filed six days after the clerk of the court certified the record on February 6, 1987. Our review of the record reveals two separate certifications of the record, one dated February 6, 1987 and one dated February 17, 1987. It appears the February 17th certification was done to include the trial judge's written findings. The record was then filed in this Court on February 23, 1987. Because the written findings followed the jury's recommendation of death and were certified by the clerk of the court and included as part of the record before the record was filed in this Court, we find there was no error.
We now turn to Holton's argument that the trial court erroneously determined that four aggravating factors applied in this case. We agree that the trial court improperly considered his contemporaneous convictions for sexual battery of the murder victim and arson to support the aggravating factor of prior felony conviction involving the use or threat of violence to the person. § 921.141(5)(b), Fla. Stat. (1985). In Wasko v. State, 505 So.2d 1314, 1318 (Fla. 1987), we held that a trial court could not rely upon a contemporaneous conviction for an offense committed against the murder victim to find this aggravating factor. In this case, however, the trial court properly relied upon Holton's prior conviction for attempted robbery in addition to relying on the contemporaneous convictions. Because there was a valid ground to support this aggravating factor, the error on this point is harmless.
*292 Furthermore, we find no error in the trial court's determination that the murder was committed while Holton was engaged in the commission of a sexual battery. We have already determined that the evidence was sufficient to support a conviction for sexual battery. The record also supports the trial court's finding that the murder was especially heinous, atrocious, or cruel. The victim's death by strangulation accomplished by a ligature tied around her neck was sufficient to support the finding of this factor. This Court previously has stated that it can be inferred "that strangulation, when perpetrated on a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable." Tompkins v. State, 502 So.2d 415, 421 (Fla. 1986) (citations omitted). See also Hildwin v. State, 531 So.2d 124 (Fla. 1988).
We disagree with the trial court's finding that the murder was committed in a cold, calculated, and premeditated manner. To support this factor, the trial court relied on the jury's determination that Holton was guilty of first-degree premeditated murder rather than felony murder. Simple premeditation of the type necessary to support a conviction for first-degree murder is not sufficient to sustain a finding that a killing was committed in a cold, calculated, and premeditated manner. Hamblen v. State, 527 So.2d 800, 805 (Fla. 1988). A heightened form of premeditation is required which can be demonstrated by the manner of the killing. Id. To achieve this heightened level of premeditation, the evidence must indicate that a defendant's actions were accomplished in a calculated manner, i.e., by a careful plan or a prearranged design to kill. Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The evidence in this case does not establish that Holton's actions resulted from a prior calculation or prearranged plan. Indeed, the facts suggest conclusions other than the finding that the murder was committed in a cold, calculated, and premeditated manner. The strangulation murder occurred during the commission of another crime, sexual battery, and could have been a spontaneous act in response to the victim's refusal to participate in consensual sex. Additionally, inmate Flemnie Birkins testified that Holton stated that he did not mean to kill the victim. We do not believe this factor was established beyond a reasonable doubt. See Harmon v. State, 527 So.2d 182 (Fla. 1988).
Next, Holton claims that the trial judge failed to consider the statutory mitigating circumstance of impaired capacity. § 921.141(6)(f), Fla. Stat. (1985). He argues that this circumstance should apply because of his longstanding drug addiction. However, in the sentencing order the trial judge stated:
2. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; to wit: The defendant testified he was addicted to drugs but still maintained his innocence of these offenses. This factor would not apply in view of that sworn testimony.
A defendant has the right to maintain his or her innocence and have a trial by jury. Art. I, § 22, Fla. Const. The protection provided by the fifth amendment to the United States Constitution guarantees an accused the right against self-incrimination. The fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant. This applies to the penalty phase as well as to the guilt phase under article I, section 9 of the Florida Constitution. Therefore, entering a plea of not guilty does not preclude consideration by the sentencer of matters relevant to mitigation.
While the trial court did not make the finding that Holton's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was *293 substantially impaired because of his drug abuse, we are not persuaded that Holton's drug abuse was not considered. Indeed, the record reflects that this matter was considered when the trial court reviewed the nonstatutory evidence presented concerning Holton's character. Therefore, any error that may have occurred in light of this fact is harmless.
Of the four aggravating circumstances found by the trial court, we have found three to be valid. The two mitigating circumstances found were that Holton is a drug addict and that he has two children.[6] While there was error in the weighing of the aggravating and mitigating factors, we conclude that reversal of one invalid aggravating factor could not reasonably have resulted in a lesser sentence. See Rogers, 511 So.2d at 535. Under the circumstances of this case, we cannot say there is any reasonable likelihood the trial court would have concluded that the three valid aggravating circumstances were outweighed by the mitigating factors. Id.; State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986). We find the error was harmless beyond a reasonable doubt.
The remaining claims raised by Holton are without merit.[7] Therefore, for the reasons expressed we affirm the first-degree murder conviction and sentence of death. We also affirm the convictions for first-degree arson and sexual battery but remand to the trial court for resentencing as to these offenses.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The elderly man with whom Holton lived testified that Holton came home at approximately 10:00 p.m.
[2] The four aggravating circumstances found by the trial court are: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; (2) the capital felony was committed while the defendant was engaged in the commission of sexual battery and arson; (3) the capital felony was especially heinous, atrocious, or cruel; and (4) the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral and legal justification. § 921.141(5)(b), (d), (h), (i) Fla. Stat. (1985).
[3] Of course, if the court sustains an objection, the other party still must bear the responsibility of moving for a mistrial, if appropriate. Simpson v. State, 418 So.2d 984, 986 (Fla. 1982), cert. denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983).
[4] When the trial court first suggested summarizing the deposition, both the state and the defendant objected. The defendant urged the trial court to grant a continuance. The state's objection centered on the inability to cross-examine the witness.
[5] Section 794.011(3), Florida Statutes (1985), states in pertinent part:

(3) A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof
... uses actual physical force likely to cause serious personal injury is guilty of a life felony. .. .
[6] We have previously recognized that the quality of being a caring parent may be considered in mitigation. Jacobs v. State, 396 So.2d 713, 718 (Fla. 1981).
[7] These claims include: (1) Holton was denied the right to present a defense because a defense witness was not allowed to testify; (2) the trial court erred by allowing into evidence enlarged photographs of the victim's body; (3) the prosecutor improperly cross-examined defense witnesses during the penalty phase of the trial; and (4) the prosecutor's remarks during closing argument were improper.