Rowe, J.
Minor Clinton Catledge, Jr. challenges his sentence for false imprisonment, asserting that the trial judge violated his due process rights by basing his sentence on his lack of remorse and failure to accept responsibility. We disagree and affirm. In seeking mitigation of his sentence, Catledge injected the issue of remorse into the proceedings, and the trial court was permitted to consider all factors relevant to mitigation, including Catledge's remorse or lack thereof.
Facts
Catledge was charged with false imprisonment and battery on a person 65 years of age or older. The charges arose from an incident involving Catledge's 73-year-old mother-in-law, Annie Smith. At trial, the jury heard conflicting versions of the incident: Smith claimed Catledge grabbed her, pushed her onto her bed, and forced himself *939 on top of her for approximately 15 minutes; Catledge explained that he was checking Smith's water heater when he slipped, fell onto the edge of bed where Smith was sitting, and was unable to stand up immediately due to his back injury. The jury acquitted Catledge of the battery charge, but found him guilty of false imprisonment.
Before sentencing, the trial court ordered a presentence investigation report (PSI). At the sentencing hearing, the State informed the court that Catledge scored a total of 36 points for the false imprisonment charge. The lowest permissible sentence was a term of probation, the highest 5 years' imprisonment. The State asked the court to impose the highest possible sentence, arguing Smith had lost her sense of security and required protection from Catledge. The State presented one witness, Catledge's brother-in-law, who testified about the impact the incident had on Smith's life and how Smith feared Catledge would retaliate against her once he was released from jail. Smith was at the hearing but declined to make a statement.
After a lengthy discussion of what the court described as "mitigating explanations," Catledge's attorney requested the court withhold adjudication and sentence Catledge to time served. He indicated that Catledge would be agreeable to conditions such as the entry of a no-contact order or completion of an anger management course. He pointed to inconsistences in Smith's trial testimony. He argued that the incident giving rise to the charges did not involve violence and emphasized that Catledge had no prior felony convictions. He presented the testimony of Catledge's wife (Smith's daughter), who testified Catledge was not a violent person and was not a danger to her mother.
Catledge elected to make a statement on his own behalf. He initially maintained that he never touched Smith and revealed that he intended to sue her for libel and slander. He also made statements reasonably interpreted as threats against his brother-in-law, who he believed had lied to the court. The sentencing court cautioned Catledge against such statements, noting he was currently before the court for sentencing on a violent crime. When asked if he had anything else to say, Catledge responded "I'm sorry she's upset. I'm sorry this all happened. I wish I'd of never went over there to help her.... I honestly do. I mean, this is - this is - I just don't know what to say."
The court then questioned Catledge about two incidents listed on his PSI, including a 2014 incident during which Catledge had become "loud, argumentative, rude and hostile" with a clerk at the Wakulla County Clerk's office. Catledge denied being hostile and explained he was upset over what he perceived was an unfair speeding ticket and late fee. During this exchange with the court, Catledge offered an explanation about his separate, 10-year-old conviction for misdemeanor stalking and claimed he was wrongfully accused.
After hearing testimony from the witnesses and arguments from counsel, the sentencing court indicated it was contemplating a mixed sentence involving a probationary term and an anger management course, with incarceration as a reinforcement. The State opposed:
[STATE]: Your Honor, I think that for the safety of this particular victim, how she feels, that prison is the only answer.
I can say that I wrote how many times the defense counsel talked about lack of violence, lack of this. What about lack of any type of remorse? Have we heard any one word here how sorry he is what happened?
*940 [COURT]: Well, he did say he was sorry that it happened and that he ever got into it, but -
[STATE]: Yeah, sorry that it happened. Not that he's sorry how it has affected her or the fact that her life was changed on that particular night.... And, in fact, such a lack of remorse that he's so angry that he decides that if he gets out, he's going to sue her.
[S]ome of the comments that were made, this defendant has absolutely no remorse.
After a 15-minute recess, the court announced its sentence:
After due consideration of the evidence and the really persuasive arguments of counsel, and consideration of defendant's demeanor and his testimony, the contents of the PSI, the Court finds that the defendant presents to others as an angry, difficult person, looks for trouble. Family members fear him and/or avoid him for various reasons.
...
There's no other explanation for what happened here, and, and - or more importantly, why it happened, except that the most likely explanation to the Court is that the defendant's anger and behavior reached some point, an unacceptable level, and he said and he did things to the wrong person in the wrong circumstances.
...
What we do know is the defendant's been found guilty of a crime of violence without any reason or legal excuse. Defendant's personality, lack of remorse, and his failure to shoulder blame for any of the questionable activities in which he's been involved in the past were, on the night that the incident occurred, kind of leaves this Court with no alternative, except to protect the safety of the community and the people in the community by adjudicating him guilty and to sentence him to confinement in the Florida State Penitentiary for a period of 60 months, less credit for 277 days' time served.
Catledge asserts that these statements by the court amounted to impermissible comments on his failure to show remorse and unwillingness to admit guilt. He claims the court violated his due process rights and seeks resentencing before a different judge.
Analysis
"A sentencing court has wide discretion regarding the factors it may consider when imposing a sentence." Bracero v. State , 10 So.3d 664, 665 (Fla. 2d DCA 2009). As a general rule, however, a sentencing court may not base its sentencing decision on a defendant's lack of remorse or failure to take responsibility. Hayes v. State , 150 So.3d 249, 251 (Fla. 1st DCA 2014). "The stated reason for the general rule ... is to ensure that a defendant is not unfairly punished for his plea of not guilty and the exercise of his constitutional rights to remain silent and to proceed to a jury trial." Corbitt v. State , 220 So.3d 446, 450-51 (Fla. 5th DCA 2016) (citing Holton v. State , 573 So.2d 284, 292 (Fla. 1990) ). "[W]here 'a statement made by the trial court can reasonably be read only as conditioning the sentence, at least in part, upon appellant's claim of innocence,' fundamental error occurs." Macan v. State , 179 So.3d 551, 553 (Fla. 1st DCA 2015) (citing Jackson v. State , 39 So.3d 427, 428 (Fla. 1st DCA 2010) ); see also Kenner v. State , 208 So.3d 271, 277 (Fla. 5th DCA 2016) ; Davis v. State , 149 So.3d 1158, 1159-60 (Fla. 4th DCA 2014) ; Green v. State , 84 So.3d 1169, 1171 (Fla. 3d DCA 2012).
But it is not constitutionally impermissible for the sentencing court to consider a defendant's lack of remorse or failure *941 to accept responsibility in all cases. The trial court may properly consider whether a defendant is remorseful when determining whether or not to mitigate a sentence. Rankin v. State , 174 So.3d 1092, 1097 (Fla. 4th DCA 2015) ; see also Corbitt , 220 So.3d at 450 (holding statement on defendant's lack of remorse and failure to accept responsibility "was made as the trial judge was attempting to find mitigating factors to consider in imposing the sentence"); Godwin v. State , 160 So.3d 497, 498 (Fla. 2d DCA 2015) ("[W]e agree ... that in context, the trial court's comments at sentencing were made in connection with its rejection of the argument for mitigation."); Shelton v. State , 59 So.3d 248, 250 (Fla. 4th DCA 2011) ("We perceive the court's comments regarding the defendant's lack of remorse as the court's recognition that it lacked any grounds to mitigate his sentence."); Ritter v. State , 885 So.2d 413, 414 (Fla. 1st DCA 2004) (citing K.N.M. v. State , 793 So.2d 1195, 1198 (Fla. 5th DCA 2001) ) ("Although remorse and an admission of guilt may be grounds for mitigation of a sentence, the opposite is not true.").
Thus, there is a critical distinction between instances where a sentencing court improperly relies on a defendant's lack of remorse in fashioning its sentence , and instances where a sentencing court properly relies on a defendant's lack of remorse in the context of mitigation . Where a sentencing court's comments regarding lack of remorse can be reasonably read as merely a "recognition that it lacked any grounds to mitigate [the] sentence," no due process violation occurs. See Shelton , 59 So.3d at 248 ; Green , 84 So.3d at 1171 n.3 (noting that "a sentencing court is free to conclude that a defendant seeking a reduction, mitigation, or downward departure of a sentence, based upon a claim of remorse or acceptance of responsibility, has failed to make such a showing").
Here, Catledge sought mitigation of his sentence, requesting that the court sentence him to time served and that the court withhold adjudication. Catledge's scoresheet reflected 36 points, thus the sentencing guidelines permitted as the lowest permissible sentence a term of probation. Catledge's attorney emphasized that this was Catledge's first felony conviction and argued that the incident giving rise to the charges was isolated and involved no violence. Although he testified that he never touched Smith, Catledge later acknowledged touching her, characterizing the incident as an accident. At one point, he admitted he was sorry "she's upset," that "this all happened," and stated that he "wish[ed] I'd of never went over there to help her."
Once Catledge made his arguments in support of mitigation, including his statement of apology, the State was permitted to rebut them. See Eaglin v. State , 19 So.3d 935, 946 (Fla. 2009) (citing Singleton v. State , 783 So.2d 970, 978 (Fla. 2001) ). The State attacked Catledge's purported apology and argued that his testimony demonstrated an aggressive demeanor and inability to take responsibility for his actions.
Because Catledge sought mitigation, the court was permitted to rely on the arguments of the parties to determine whether to impose a more lenient sentence. In this context, the trial court's comments on Catledge's lack of remorse and failure to accept responsibility were made in rejection of Catledge's arguments for mitigation, including his characterization that he was not a violent person and that the incident was an accident.
Further, this is not a case where a defendant remained silent at sentencing and the trial court equated the defendant's silence *942 to a lack of remorse, "caus[ing] an impermissible chilling effect upon a defendant's due process rights." Green , 84 So.3d at 1172. Nor is this a case where a defendant sought a guidelines sentence and apologized for his actions only to have the trial court expressly rely on the insincerity of the apology when fashioning its sentence. Rather, this is a case where the trial court was faced with a request for mitigation and properly weighed the competing evidence, including the defendant's testimony that he was sorry and the State's argument that he was not sorry, before imposing a sentence within the guidelines. As the Third District in Green cautioned:
A defendant who chooses to speak at sentencing and attempts simultaneously to express remorse while maintaining his innocence, does so at the risk that the trial judge will find such expressions of remorse insincere, exposing a defendant to the possibility of a harsher sentence.
Id.
In seeking mitigation, Catledge expressly said he was sorry for what happened to Smith. The State permissibly rebutted his arguments, and the trial court was entitled to weigh all of the evidence in its determination of whether or not to mitigate. Because the trial court's statements were made in determining whether to mitigate Catledge's sentence, they do not constitute fundamental error. We AFFIRM the trial court's imposition of judgment and sentence.
Roberts and Winokur, JJ., concur.