# Supreme Court of Florida

_____

No. SC19-716
_____

**ALVIN DAVIS,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

December 2, 2021

CANADY, C.J.

In this case, we consider whether a trial court's consideration of failure to take responsibility during a sentencing proceeding necessarily violates a defendant's due process rights. We have for review the decision of the First District Court of Appeal in *Davis v. State*, 268 So. 3d 958, 968-69 (Fla. 1st DCA 2019), in which the district court certified the following question to be of great public importance:

> WHEN, IF EVER, MUST AN APPELLATE COURT
> REVERSE A SENTENCE BASED ON THE TRIAL
> COURT'S CONSIDERATION OF "REMORSE," "FAILURE
> TO TAKE RESPONSIBILITY," OR THE LIKE?

We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

## I. BACKGROUND

The facts as set forth by the First District are as follows:

A jury convicted Davis of possessing a firearm as a convicted felon.  According to trial testimony, a teenager was driving a car with Davis as a passenger.  Officers stopped the car and found drugs, drug paraphernalia, and a gun.  The teenage driver testified that he did not know a gun was in the car until right before the traffic stop, when Davis pulled out the gun, wrapped it in an orange shirt, and stuffed it under the seat.

The teen's testimony was essential, and the defense suggested it was also untrue. . . . The jury convicted.

Davis moved for a new trial.  After a hearing, the court denied the motion, and the case proceeded to sentencing.  The presentence investigation report noted Davis's "extensive criminal history," which included "numerous violent offenses."  It also concluded that Davis "appears to have a history of gang related activity" and "apparently continues to be a threat to the safety of the community."  The PSI [(presentence investigation)] report recommended the maximum sentence.[N.1]

[N.1]  A PSI's purpose is to provide information to help the court impose an appropriate sentence.  *See* Fla. R. Crim P. 3.712(a). . . .

At the sentencing hearing, Davis declared he was innocent.  He insisted that the gun was not his, that the jury convicted him without sufficient evidence, and that his counsel performed inadequately.  After Davis spoke, the court pronounced sentence.  In doing so, the court recounted Davis's significant criminal history and told Davis "you still fail to take any responsibility for your actions."  The court concluded that, "considering your history here, your failure to take any responsibility, the

- 2 -

nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years . . . , which is the statutory maximum."

*Davis*, 268 So. 3d at 961-62.

Davis appealed, and the First District heard his appeal en banc. Receding from its own precedent, the First District concluded that "lack of remorse and refusal to accept responsibility can be valid sentencing considerations when sentencing within the statutory range." *Id.* at 961.

In reaching this conclusion, the First District explained that "[t]he commonsense approach of considering a defendant's remorse—or willingness to take responsibility—fits with the Legislature's command that each sentence be not only commensurate with the severity of the offense but also fashioned in light of 'the circumstances surrounding' it." *Id.* at 963 (quoting § 921.002(1)(c), Fla. Stat. (2017)). The district court noted the United States Supreme Court's recognition that " 'possession of the fullest information possible concerning the defendant's life and characteristics' is '[h]ighly relevant—if not essential' to a judge's selection of an appropriate sentence," *id.* (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)), and that Florida courts have

considered a variety of factors when sentencing a defendant, including financial resources, employment status, family obligations, and overall reputation in the community, *id.* at 964 (citing *Noel v. State*, 191 So. 3d 370, 379 (Fla. 2016); *Imbert v. State*, 154 So. 3d 1174, 1175 (Fla. 4th DCA 2015)). The First District further explained that "[a] defendant's remorse or willingness to accept responsibility comprises part of the whole picture," and "speak[s] to a defendant's character and to the defendant's potential for rehabilitation," which is important because a sentencing judge is obligated to consider a convicted defendant's potential for rehabilitation, or lack thereof, in fashioning a sentence. *Id.* (citing *Simmons v. State*, 419 So. 2d 316, 320 (Fla. 1982)).

The First District addressed several counterarguments to its change in precedent. First, it discussed the "view that judges may rely on remorse to *reduce* a sentence but may not rely on a *lack* of remorse to *increase* a sentence." *Id.* at 965. While the First District acknowledged that this approach was taken by this Court in the capital case *Pope v. State*, 441 So. 2d 1073, 1078 (Fla. 1983), it distinguished the instant case, because noncapital sentencing does not consider aggravating factors to justify a higher sentence as is

- 4 -

required in capital sentencing. *Davis*, 268 So. 3d at 965. In this case, the First District noted, the trial court was authorized to impose the maximum sentence based only on the fact of the conviction and without further findings, which are necessary to impose an aggravated sentence of death in a capital case. *Id.*

The First District explained that "if [it] held that Davis's refusal to take responsibility could not increase his sentence but could justify *not lowering* his sentence, [it] would have to figure out which of those happened." *Id.* at 966. But this could prove difficult since it is unclear whether a particular sentence reflects "an aggravated sentence or an unmitigated sentence." *Id.* The court noted that none of the minority opinions written in this case "doubts the legality of considering remorse or acceptance of responsibility to *reduce* (or not reduce) a sentence." *Id.*[1] The court took issue with this position, explaining,

---

1. Indeed, consideration of remorse to reduce a sentence is specifically authorized in section 921.0026(2)(j), Florida Statutes (2017), which permits a downward departure from the lowest permissible sentence in cases where "[t]he offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse."

> This further supports our conclusion that these considerations are, in fact, valid sentencing considerations. It should go without saying that no up-versus-down distinction would be an issue with truly impermissible sentencing factors. With religion, for example, we would never say a judge could lighten a sentence for defendants who disavowed Catholicism, so long as the judge did not enhance sentences for those who embraced Catholicism. We would instead say—quite emphatically—that a defendant's religious faith must not play *any* part in the sentence. In other words, we would say improper sentencing factors should not be factors in sentencings—up or down.

*Id.* (citation omitted). To put it another way, the court concluded that if acceptance of responsibility is a permissible sentencing consideration to reduce a sentence, then it is simply a proper sentencing consideration, regardless of its purpose.

Finally, turning to this Court's decision in *Holton v. State*, 573 So. 2d 284, 292 (Fla. 1990), another capital case, the First District rejected the argument that *Holton*'s prohibition against using pleas of not guilty against defendants is comparable to the voluntary allocution in this case. *Davis*, 268 So. 3d at 967. The First District reasoned that "when a defendant forgoes permissible benefits of pleading guilty (such as a lenient sentence), it does not necessarily follow that his not-guilty plea was unconstitutionally 'used against him.'" *Id.* at 966-67. The court continued, "To the extent Davis

had to choose between maintaining his innocence at sentencing or seeking a more favorable sentence, he was in no different situation than defendants facing plea offers every single day." *Id.* at 967. The First District then distinguished cases of true judicial vindictiveness, which would clearly be violative of due process rights. *Id.* at 967-68. But, the court reasoned, withholding leniency, as the trial court here did, is not equivalent to punishing a defendant. *Id.*

Concluding that there was no constitutional violation, the First District held "that a trial judge does not violate a defendant's due process rights by merely considering the defendant's lack of remorse or refusal to accept responsibility." *Id.* at 961. The First District thus affirmed Davis's conviction and sentence but certified the aforementioned question to be one of great public importance. *Id.* at 968-69.

We accepted jurisdiction to answer the certified question, but because the district court did not pass upon the entirety of the question as framed, we first rephrase it based on the specific circumstances presented by this case:

DOES A TRIAL COURT, WHEN IMPOSING A SENTENCE ON A DEFENDANT WHO HAS VOLUNTARILY CHOSEN TO ALLOCUTE AND MAINTAIN HIS INNOCENCE AT THE SENTENCING HEARING, VIOLATE THE DEFENDANT'S DUE PROCESS RIGHTS BY CONSIDERING THE DEFENDANT'S FAILURE TO TAKE RESPONSIBILITY FOR HIS ACTIONS?[2]

## II. ANALYSIS

Davis contends that consideration by a trial court at sentencing of a defendant's failure to take responsibility for his or her actions violates due process "because it infringes on the defendant's right to testify and not incriminate himself." Initial Br. of Pet. at 13. We disagree. In support of his position, Davis relies on this Court's opinion in *Holton,* a capital case, in which this Court stated that "[a] trial court violates due process by using a protestation of innocence against a defendant." 573 So. 2d at 292. He relies on another capital case, *Pope,* which states that "lack of remorse should have no place in the consideration of aggravating

---

2. Our rephrasing of the question should not be understood to suggest that we view lack of remorse as materially different than failure to take responsibility. Lack of remorse and failure to take responsibility ordinarily are simply different ways of characterizing the same attitude manifested by a defendant.

factors." 441 So. 2d at 1078. But his reliance on these capital cases is misplaced.

In *Pope*, "[t]he trial court, in finding the murder especially heinous atrocious or cruel commented that 'the Defendant has [not] shown any remorse, having elected to steadfastly deny his guilt.' " *Id.* at 1077. The standard jury instruction explaining the heinous, atrocious, or cruel capital aggravator in effect at the time included a definition of "cruel" that "tended to focus attention on the mindset of the murderer—his consciencelessness or pitilessness." *Id.* Thus, we explained that "lack of remorse came to be considered relevant to the determination under this aggravating factor." *Id.* Before ultimately concluding that any error was harmless because "the applicability of this aggravating factor was proved beyond a reasonable doubt without regard to Pope's remorse or lack thereof," *id.* at 1078, this Court wrote that "[t]o equate a defendant's not-guilty plea with lack of remorse which may be considered in weighing an aggravating circumstance in support of imposition of the death penalty would in effect punish the defendant for exercising rights of due process," *id.* at 1077. The Court went on to conclude that "any consideration of defendant's remorse" is

"extraneous to the question of whether the murder of which he was convicted was especially heinous, atrocious or cruel." *Id.* at 1078. The Court reasoned that "[e]vents occurring after death, no matter how revealing of depravity and cruelty, are not relevant to the atrocity of the homicide." *Id.*

Having resolved the issue on that basis, the Court went on to observe:

> Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence. This invites the sort of mistake which occurred in the case now before us—inferring lack of remorse from the exercise of constitutional rights. This sort of mistake may, in an extreme case, raise a question as to whether the defendant has been denied some measure of due process, thus mandating a remand for reconsideration of the sentence. For these reasons, we hold that henceforth lack of remorse should have no place in the consideration of aggravating factors. Any convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor.

*Id.*

But *Pope* is inapplicable here. This case is not a capital case requiring consideration of aggravating factors. In capital cases, only statutory aggravating factors may be considered, and a statutory aggravating factor is required to be proven beyond a

- 10 -

reasonable doubt before a sentence of death may be imposed. *See* § 921.141(2)(b)2., Fla. Stat. (2020) ("If the jury . . . [u]nanimously finds at least one aggravating factor, the defendant is eligible for a sentence of death . . . ."); *State v. Poole*, 297 So. 3d 487, 491 (Fla. 2020) (upholding this Court's prior ruling that "a jury must unanimously find the existence of a statutory aggravating circumstance beyond a reasonable doubt"), *cert. denied*, 141 S. Ct. 1051 (2021). In a noncapital case, the statutory maximum sentence is a legal sentence by virtue of the conviction alone. *See* § 921.002(1)(g), Fla. Stat. (2017) ("The trial court judge may impose a sentence up to and including the statutory maximum for any offense . . . ."). As the First District correctly observed:

> In Davis's case, . . . the judge had statutory authority to impose a sentence of up to fifteen years. § 775.082(1)(d), Fla. Stat. He could do so with a remorseful defendant, and he could do so with an unremorseful defendant. He could do so with a defendant taking responsibility for his crimes, and he could do so with a defendant unwilling to take responsibility. The conviction alone was enough to justify the sentence. No "aggravator" or additional findings were necessary.

*Davis*, 268 So. 3d at 965. In other words, the Legislature empowered the trial court to sentence Davis to fifteen years' imprisonment whether or not he took responsibility for his actions,

- 11 -

because it was the fact of his conviction that subjected him to a sentence up to and including the statutory maximum. So the statutory scheme applicable here, unlike the statute governing aggravating circumstances in capital cases that was applied in *Pope*, does not foreclose consideration in sentencing of the defendant's failure to accept responsibility.

In *Holton*, the trial court declined to apply the proposed mitigating circumstance that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. 573 So. 2d at 292. In finding that this mitigating circumstance was not established, the trial court wrote, "The defendant testified he was addicted to drugs but still maintained his innocence of these offenses. This factor would not apply in view of that sworn testimony." *Id.*

On appeal, this Court said that "[t]he fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt," and that "entering a plea of not guilty does not

preclude consideration by the sentencer of matters relevant to mitigation." *Id.* In sum, this Court concluded that the trial court had used the defendant's not guilty plea as an improper basis for rejecting a mitigating circumstance that was established. Ultimately, this Court concluded that any error was harmless because Holton's drug abuse was considered mitigating under a different mitigating circumstance. *Id.* at 298. *Holton*'s broad, unqualified statement that "using a protestation of innocence against a defendant" "violates due process," *id.* at 292, goes far beyond the facts presented and is unnecessary to the Court's decision. It constitutes dicta that we expressly disapprove—dicta that cannot be reconciled with the Supreme Court's decision in *United States v. Grayson*, 438 U.S. 41 (1978), which we discuss below.

The facts of this case are entirely distinguishable from *Holton*. This again is not a capital case that involves a weighing of aggravating factors and mitigating circumstances in order to determine a sentence. "Judges in noncapital cases . . . do not consider 'aggravators' and 'mitigators' in the same sense that capital sentencers do." *Davis*, 268 So. 3d at 965.

> If a judge gives an unremorseful defendant a longer sentence than he might have given a remorseful defendant, we often will never know whether the resulting differential flowed from an "aggravated" sentence or an "unmitigated" sentence. There is no baseline sentence, no upward or downward departure— just a sentence that involved a judge's consideration (in some fashion) of the offense and the defendant's characteristics.

*Id.* at 966.[3]

And the fact that Davis maintained his innocence and the trial court observed that he failed to take responsibility for his actions did not result in the trial court "preclud[ing] consideration" of other relevant sentencing factors, particularly because Davis did not offer any. During his allocution, Davis discussed only his innocence. He

---

3. This line of analysis helps explain why our decision in *State v. Mischler*, 488 So. 2d 523 (Fla. 1986), has no persuasive force here. In *Mischler*, we cited *Pope* for the proposition "that lack of remorse cannot be inferred from the exercise of constitutional rights." 488 So. 2d at 526. Although *Mischler* involved a noncapital case, it nonetheless arose in a context dissimilar to the context presented by this case. *Mischler* addressed the issue of what constituted "clear and convincing reasons" for an upward departure sentence under the guidelines sentencing scheme then in effect. *Id.* at 525. The trial court found the lack of remorse to be a ground for an upward departure sentence based on statements of the defendant in the presentence report that protested her innocence and criticized the criminal justice system. *Id.* at 526. We determined that such "facts do not support a finding of lack of remorse" under the applicable "clear and convincing" standard. *Id.* Of course, no such standard is applicable here.

offered no other reasons to the court why a sentence less than the maximum should be imposed. The trial judge therefore had no opportunity to "preclude consideration" of other matters offered by Davis that might have been relevant to the sentence. Indeed, Davis specifically told the trial court that he was not asking for leniency because he did nothing wrong. ("If I did anything wrong, or said anything that's inappropriate, I would apologize. Right now, and I ask -- I would be asking for leniency, but I did nothing wrong. I am not guilty of the charge that I'm accused of. I am innocent.") Instead, he accused multiple parties of misconduct, blamed the driver of the car, the police, his lawyer, and the trial court, repeatedly attempted to explain his interpretations of the law to the judge, and asked the judge to consider evidence that was not introduced at the trial.

The lowest permissible sentence under the Criminal Punishment Code, in accordance with Davis's sentencing scoresheet, was 118.125 months (approximately nine years and ten months) and the statutory maximum sentence was fifteen years. The State requested that the court impose the maximum sentence because of Davis's numerous previous convictions and violent

history, while defense counsel urged the court to impose the lowest permissible sentence per the scoresheet. The law therefore provided the trial judge with a range from approximately ten to fifteen years to which he could sentence Davis. In fashioning the sentence, the trial court considered that Davis had "an extensive violent history here and a lot of it involves a firearm," including, "a second degree murder, attempted second degree murder, attempted armed robbery with a firearm, armed robbery with a firearm, aggravated assault with a deadly weapon, discharging a firearm on school property, aggravated battery with a deadly weapon, battery on a law enforcement officer, felony battery." The court categorized this as "a violent, unfortunate history that we're dealing with" and noted that the offense for which Davis was to be sentenced also involved a firearm.

The trial judge had numerous valid reasons for imposing the maximum sentence here, but, as stated previously, he did not need to articulate any reason. The judge was statutorily authorized to impose a sentence up to fifteen years based solely on the fact of the conviction, regardless of any sentencing considerations and whether or not Davis took responsibility for his actions. "The

conviction alone was enough to justify the sentence. No 'aggravator' or additional findings were necessary." *Davis*, 268 So. 3d at 965-66. The Supreme Court has long recognized that due process permits "a sentencing judge [to] exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams*, 337 U.S. at 246. The Court has "never [called into] doubt[] the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005). Whether a defendant says nothing at sentencing or takes full responsibility and is able to show that he is a pillar of the community, a judge retains the discretion to impose the maximum sentence.

Further, while a defendant does have the right to maintain his innocence by pleading not guilty and going to trial, and the right to remain silent, Davis chose to voluntarily allocute at his sentencing and thus waived his right to remain silent. And because Davis waived the right to maintain his silence, the trial court did not violate Davis's right to due process by considering the words that Davis voluntarily offered in imposing a sentence. "Just as a jury

weighs a defendant's testimony once he waives his Fifth Amendment privilege at trial, a judge may consider a defendant's freely offered allocution . . . during sentencing." *United States v. Stanley*, 739 F.3d 633, 652 (11th Cir. 2014). This is true even if those words are detrimental to the defendant.

Nor was Davis forced to choose between allocution and maintenance of his innocence; he certainly could have allocuted without voicing his disagreement with the verdict, blaming the driver, the police, his lawyer, and the trial court for his conviction, and attempting to explain his personal interpretations of the law to the judge. He could have asked for leniency without admitting his guilt. He could have provided the judge with reasons to impose a sentence less than the maximum besides his claimed innocence. But he instead chose to make a lengthy statement claiming innocence, denying responsibility, and placing blame for his conviction on the alleged misconduct of others. The trial court was under no obligation to ignore such statements and did not err in considering those statements in imposing the legal sentence here. "[O]ur system need not treat as equals an unrepentant convict and

one who shows remorse." *United States v. McClain*, 2 F.3d 205, 207 (7th Cir. 1993).[4]

In *Grayson*, 438 U.S. at 44, the Court considered the propriety of the following statement by a sentencing judge considering the defendant's testimony: "[I]t is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so." (Emphasis removed.) In rejecting the defendant's due process argument—including a claim that allowing a sentencing judge to consider the falsity of testimony given by the defendant would chill the defendant's right to testify—the Court stated that "[a] defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." 438 U.S. at 50. The Court thus concluded that "the defendant's readiness to lie under oath—especially when,

---

4. We agree with the First District that the record here does not remotely suggest that the trial court punished the defendant for exercising his constitutional right to go to trial. *Davis*, 260 So. 2d at 968. And we need not speculate here about what facts would need to be proven to demonstrate a due process violation of that nature.

as here, the trial court finds the lie to be flagrant—may be deemed probative of his prospects for rehabilitation." *Id.* at 52.

According to the Court, "The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath—unless we are to say that the oath is mere ritual without meaning." *Id.* at 54. Because there is no "protected right" to lie to the court, any potential "chilling effect on a defendant's decision to testify falsely" "is entirely permissible." *Id.* The Court therefore "reaffirm[ed] the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society." *Id.* at 55.

We see no reason to disagree with the teachings of *Grayson.* Nor do we see any reason to deny the relevance of those teachings to the issue presented by this case. Just as in *Grayson,* the sentencing judge here was entitled to consider testimony that

indicated the defendant's unwillingness to accept the truth and to take responsibility for his own conduct.

## III.  CONCLUSION

We hold that when a defendant voluntarily chooses to allocute at a sentencing hearing, the sentencing court is permitted to consider the defendant's freely offered statements, including those indicating a failure to accept responsibility.  Thus, we answer the rephrased question in the negative and approve the result in the decision on review.

It is so ordered.

LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
GROSSHANS, J., concurs with an opinion.
POLSTON, J., dissents with an opinion, in which LABARGA, J., concurs.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

GROSSHANS, J., concurring.

I agree with the majority's holding that due process and the right against compelled self-incrimination do not preclude a sentencing court from considering a defendant's refusal to take responsibility for his or her criminal conduct when the defendant

- 21 -

freely speaks at sentencing. As a general matter, personal constitutional rights may be waived. *See In re Shambow's Estate*, 15 So. 2d 837, 837 (Fla. 1943) ("It is fundamental that constitutional rights which are personal may be waived."). For example, a defendant may waive the right to trial by jury, the right to counsel, the right to confront witnesses, and the protection against unreasonable searches and seizures. *See United States v. Mezzanatto*, 513 U.S. 196, 201 (1995); *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008); *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000).

The right against compelled self-incrimination is no different. *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966) (recognizing that a defendant in custody may waive the right to remain silent); *Miller v. State*, 208 So. 3d 178, 181 (Fla. 1st DCA 2016) ("When the defendant waives the privilege against self-incrimination and freely speaks to police, the State is free to treat the defendant's testimony regarding those statements like that of any other witness." (citing *Ivey v. State*, 586 So. 2d 1230, 1234 (Fla. 1st DCA 1991))); *Allen v. State*, 322 So. 3d 589, 602 (Fla. 2021) (noting that a defendant may waive the right to remain silent at trial, stating: "[W]hen a defendant

chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination.") (alteration in original) (quoting *Kansas v. Cheever*, 571 U.S. 87, 94 (2013))); *State v. Heath*, 343 So. 2d 13, 15-16 (Fla. 1977) (holding that an agreement to accept the terms of probation waives the Fifth Amendment privilege against self-incrimination with respect to information required to be disclosed pursuant to certain probationary terms).

Here, Davis spoke voluntarily at sentencing, thereby waiving his constitutional right against compelled self-incrimination. Once he waived this right, there could be no basis for claiming that the trial court violated due process for considering his statements in determining a proper sentence.

And Davis's uncoerced words were relevant to the severity of his criminal punishment. Specifically, through his words, Davis manifested a refusal to take responsibility for his criminal conduct, a matter bearing on his amenability to rehabilitation. Thus, the sentencing court properly considered Davis's refusal to accept responsibility for his criminal conduct in imposing the maximum sentence.

Reaching a different conclusion, the dissent[5] looks to the Florida Constitution, which provides, "No person shall be deprived of life, liberty or property without due process of law . . . or be compelled in any criminal matter to be a witness against oneself." Art. I, § 9, Fla. Const. According to the dissent, this provision affords a defendant the constitutional right to maintain his or her innocence at sentencing, regardless of whether he or she freely speaks. Dissenting op. at 29, 33-43.

However, nothing in the text of article I, section 9 confers such an unwaivable right or forbids consideration of Davis's voluntary statements. Aside from this lack of textual support, the dissent's position is also inconsistent with federal case law holding that the self-incrimination clause of the United States Constitution—nearly identical to its Florida counterpart—does not bar a sentencing court from considering a defendant's failure to take responsibility or lack of remorse. *See United States v. Stanley*, 739 F.3d 633, 652 (11th Cir. 2014) ("Harris's argument confuses the nature of the Fifth Amendment privilege. During sentencing, a court 'may not weigh

---

5. For purposes of this opinion, I refer to the dissent authored by Justice Polston, joined by Justice Labarga.

the exercise of [Fifth Amendment] rights against the defendant.' But a court may take into account a defendant's freely offered statements indicating a lack of remorse. Just as a jury weighs a defendant's testimony once he waives his Fifth Amendment privilege at trial, a judge may consider a defendant's freely offered allocution regarding remorse during sentencing." (alteration in original) (citations omitted) (quoting *United States v. Rodriguez*, 959 F.2d 193, 197 (11th Cir. 1992))); *accord United States v. McKee*, 752 F. App'x. 462, 466 (9th Cir. 2018); *United States v. Keskes*, 703 F.3d 1078, 1090-91 (7th Cir. 2013); *United States v. Mitchell*, 681 F.3d 867, 885 (6th Cir. 2012); *United States v. Douglas*, 569 F.3d 523, 527-28 (5th Cir. 2009); *United States v. Abu Ali*, 410 F. App'x. 673, 681 (4th Cir. 2011); *United States v. Bines*, 309 F. App'x. 580, 582 (3d Cir. 2009); *United States v. Wallace*, 755 F. App'x. 63, 65–66 (2d Cir. 2018); *United States v. Cruzado-Laureano*, 527 F.3d 231, 236-37 (1st Cir. 2008).

Not relying on the text of the Florida Constitution or federal case law, the dissent instead finds support in this Court's jurisprudence—mainly *Pope v. State*, 441 So. 2d 1073 (Fla. 1983), and *Holton v. State*, 573 So. 2d 284 (Fla. 1990). I agree with the

majority that *Pope* and *Holton* are distinguishable. Both were capital cases governed by a statute not applicable to sentencing in the noncapital context. Under that statute, refusal to take responsibility or show remorse is not relevant to any of the aggravating factors for consideration in sentencing a capital defendant. § 921.141(6), Fla. Stat (2020) (providing an exclusive list of aggravating factors). In contrast, a sentencing court in a noncapital case may consider a broader set of facts when deciding whether to impose the harshest sentence within the statutory range.[6]

Though *Holton* is distinguishable, statements in that case arguably support the dissent. In *Holton*, this Court stated, "A trial court violates due process by using a protestation of innocence against a defendant. This applies to the penalty phase as well as to the guilt phase under article I, section 9 of the Florida Constitution." 573 So. 2d at 292. Though it is dicta, the district

6. Some of the district court decisions cited by the dissent also involved a defendant's silence at sentencing or a defendant's not-guilty plea. *E.g.*, *Green v. State*, 84 So. 3d 1169, 1172 (Fla. 3d DCA 2012). Unlike the defendants in those cases, Davis made voluntary statements at sentencing. Thus, those factually dissimilar cases are unpersuasive here.

courts have relied on this statement in evaluating sentencing challenges in noncapital cases. *See, e.g.*, *Pierre v. State*, 259 So. 3d 859, 861 (Fla. 4th DCA 2018). Consequently, I agree with the majority's express disapproval of the *Holton* dicta as inconsistent with today's decision. Majority op. at 13.

Finally, one statement of the majority warrants a brief discussion. The majority states, "[T]he Legislature empowered the trial court to sentence Davis to fifteen years' imprisonment whether or not he took responsibility for his actions, because it was the fact of his conviction that subjected him to a sentence up to and including the statutory maximum." Majority op. at 12. I do not interpret this statement as meaning that a sentencing court can properly consider any and all facts so long as the sentence ultimately falls within the statutory range. Thus, in my view, today's decision would not excuse a court's consideration of an unconstitutional factor, such as race or religion, in imposing a sentence up to and including the statutory maximum. Accordingly, if a court considers an unconstitutional factor in imposing the sentence, that sentence would still be unlawful even if it was within the statutory range. But here, as we have concluded, the

sentencing court considered no such unconstitutional factor and was fully authorized to sentence Davis to the statutory maximum based on his conviction.

Thus, for the reasons given above, I join the majority opinion in its entirety.

POLSTON, J., dissenting.

I dissent from the majority's decision holding that a trial court can punish a defendant for his lack of remorse during a sentencing proceeding. This result is inconsistent with our precedent interpreting article I, section 9 of the Florida Constitution, the consensus among the district courts of appeal, and has no basis in our statutory sentencing scheme. Showing remorse is admitting you did something wrong—an admission of guilt. And increasing a defendant's sentence based on the failure to show remorse is punishing a defendant for failing to admit guilt. Punishing someone unless they confess guilt of a crime is a violation of due process and the right against self-incrimination. Accordingly, I would hold that a trial court violates a defendant's constitutional right to due process and right against self-incrimination where it penalizes a defendant for the failure to admit guilt.

## I. BACKGROUND

Alvin Davis was convicted of possession of a firearm as a convicted felon. *Davis v. State*, 268 So. 3d 958, 961 (Fla. 1st DCA 2019). The statutory maximum for this offense was 15 years, but Davis' sentencing scoresheet calculated the minimum sentence to be approximately 10 years. At his sentencing hearing, Davis elected to speak on his behalf and made the following statement:

> Your Honor, I'd like to thank you for letting me talk on the record. I do not understand why I was found guilty of possessing a gun I never touched, neither did I know was in that car. It's clear by the evidence that I am only a scapegoat for the driver of that vehicle. The bullets that was in that glove compartment would have proven the driver's DNA on it. So, the State, nor my attorney refused to have it tested because it would have proved the driver was lying.
>
> Constructive possession means I had knowledge and control over that gun. I did not, and nothing can prove that. The police officer clearly on the record coerced and manipulated the driver into saying that it was my gun. They recorded it as saying even to him that he could smoke weed and not be arrested. They also told him, a juvenile, that if he was going to smoke weed he should buy a better quality of weed. It is all on the transcript and you read it and seen it firsthand in the MAVRIC.[7]
>
> How could this injust (phonetic) take place in this courtroom without my lawyer taking part? Evidence in

---

7. MAVRIC is the in-car camera system used to record audio and video of traffic stops.

- 29 -

the law of construction possession proves me right. I understand I cannot get any justice here in this courtroom. I trust my life and liberty in the hands of the First DCA Court who knows firsthand the illegal action taking place in this Leon County courtroom assistance, most of these appointed court lawyers.

If I did anything wrong, or said anything that's inappropriate, I would apologize. Right now, and I ask--I would be asking for leniency, but I did nothing wrong. I am not guilty of the charge that I'm accused of. I am innocent. And the facts, evidence and the law proves me right. I will allow the First DCA to correct this injust (phonetic).

I have no knowledge of a firearm. I got charged with possession of a firearm. That means it came off my possession. They never found me with any firearm on my person. I knew nothing about the MAVRIC transcript that you read, Your Honor, but I know you studied law for many years, I know you looked at that MAVRIC transcript. I know you read it, just out of curiosity. I know you know law from the front to the back. I know you seen the injust (phonetic). I know you seen him coerce with him. I know you read it.

Your Honor, I feel like I'm auctioned off to prison, my freedom, and nothing that I went to trial for, nobody, not even the evidence, not even the firearm had my fingerprints or my DNA on it. I came in front of you, Your Honor. On October 27th, I told you she refused to have the evidence suppressed, the ammunition. She refused. She coerced with the state Attorney about the MAVRIC. They both agreed to not to even talk about the MAVRIC. I knew nothing about it. That wasn't my agreement. I wanted to show the MAVRIC. I wanted to talk about the MAVRIC. That was my defense.

It clearly in the MAVRIC you see him coercing with him. They're talking to a juvenile. If he's on weed and marijuana at the time of the stop, he can't give a statement without his parent present. He can't make a statement at all because he's on drugs and alcohol. He

admitted to them. They told him they will show him leniency if he will make a statement saying that was my firearm they will let him go home. He drove away. I went to jail. I'm the only one went to jail. By law, he was in possession of that car. He's responsible for everything in that car. He's a primary driver of that vehicle. Thank you, Your Honor. I ask will you consider--I know you read the MAVRIC transcript. I know.

The trial court concluded the proceedings by sentencing Davis to 15 years, the statutory maximum, and addressed Davis:

THE COURT: All right. Thank you. All right. Mr. Davis, quite frankly we're not here to retry the facts of the case. I heard the evidence. It was put before a jury and they found beyond a reasonable doubt that you are guilty of the charged offense. And from my review of the evidence, and from what I heard in the courtroom and the testimony and the evidence provided, quite frankly I think they got it right.

And I can see here by your score sheet, you have an extensive violent history here and a lot of it involves a firearm. We have a second degree murder, attempted second degree murder, attempted armed robbery with a firearm, armed robbery with a firearm, aggravated assault with a deadly weapon, discharging a firearm on school property, aggravated battery with a deadly weapon, battery on a law enforcement officer, felony battery. Just a violent, unfortunate history that we're dealing with. And a lot of it involves a firearm. And now we have a new offense that involves a firearm again.

And quite frankly, you know, they found you with the firearm before any harm could come of it, because who knows what would have happened–

THE DEFENDANT: They found me with the firearm?

THE COURT: --if there was an opportunity to use that firearm in the future. And so that is one of the good

- 31 -

things that came out of it was that there wasn't that opportunity.

You still fail to take any responsibility for your actions. And considering your history here, your failure to take any responsibility, the nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years in the Department of Corrections, which is the statutory maximum.

On appeal, the First District Court of Appeal, sitting en banc, receded from its own precedent to hold that "lack of remorse and refusal to accept responsibility can be valid sentencing considerations when sentencing within the statutory range." *Davis*, 268 So. 3d at 961. Davis now asks us to quash the decision of the First District.

## II. ANALYSIS

Article I, section 9 of the Florida Constitution provides: "No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, *or be compelled in any criminal matter to be a witness against oneself*." Art. I, § 9, Fla. Const. (emphasis added). Until now, this Court has interpreted this provision to protect a defendant's right to maintain his innocence at sentencing without fear of retribution. Beginning with *Pope v. State*, 441 So. 2d 1073, 1078 (Fla. 1983), we held that

a defendant's lack of remorse did not bear on the consideration of aggravating factors in capital sentencing.[8] The defendant in that case "steadfastly den[ied] his guilt," which the trial court interpreted as a lack of remorse and used as a fact to establish the existence of the heinous, atrocious, and cruel aggravating circumstance. *Id.* at 1077. But we distinguished the defendant's denial of guilt from the defendant's statements about the crime, explaining:

> Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence. This invites the sort of mistake which occurred in the case now before us—inferring lack of remorse from the exercise of constitutional rights. This sort of mistake may, in an extreme case, raise a question as to whether the defendant has been denied some measure of due process, thus mandating a remand for reconsideration of the sentence. For these reasons, we hold that henceforth lack of remorse should have no place in the consideration of aggravating factors. Any convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor.

*Id.* at 1078.

---

8. Prior to *Pope*, we recognized that lack of remorse was an improper aggravating circumstance in capital sentencing in *Jackson v. Wainwright*, 421 So. 2d 1385, 1387 (Fla. 1982), and *McCampbell v. State*, 421 So. 2d 1072, 1075 (Fla. 1982), which both rejected lack of remorse as a statutory aggravator in and of itself.

In *State v. Mischler*, 488 So. 2d 523, 526 (Fla. 1986), we held

that, in noncapital sentencing, lack of remorse inferred from an

exercise of constitutional rights or an assertion of innocence was

not a clear and convincing reason to support an upward departure

sentence.  As we explained:

> The trial court's finding that Mischler was not remorseful
> is based entirely on her statement in the presentence
> report that she did not commit the alleged theft, that the
> employer was the culpable party, and that she lost at
> trial because "he [the victim] had money and those with
> money rule the world."  These statements cannot be
> termed as lack of remorse.  Rather, Mischler was merely
> maintaining her innocence and voicing her opinion on
> the workings of the criminal justice system in America.
>    In *Pope v. State*, 441 So. 2d 1073, 1078 (Fla. 1983),
> we held that lack of remorse cannot be inferred from the
> exercise of constitutional rights.  Similarly, in *Hubler v.
> State*, 458 So. 2d 350 (Fla. 1st DCA 1984), the court held
> that lack of remorse cannot be proven solely by the fact
> that a defendant maintains his innocence.  Thus, we hold
> that lack of remorse to support a departure sentence
> cannot be inferred from either the mere exercise of a
> constitutional right or a continuing assertion of
> innocence.

*Mischler*, 488 So. 2d at 526.

And in *Holton v. State*, 573 So. 2d 284, 292 (Fla. 1990), we

expressed similar concerns while holding that protestations of

innocence do not preclude a court from considering relevant

statutory mitigators in capital sentencing.  The defendant in *Holton*

- 34 -

asked the court to consider an impaired capacity statutory mitigator, but the trial court did not apply this mitigator because it found that the defendant had demonstrated his capacity to appreciate the criminality of his actions by maintaining his innocence. *Id.* at 292-93. This Court found error and observed:

> A defendant has the right to maintain his or her innocence and have a trial by jury. Art. I, § 22, Fla. Const. The protection provided by the fifth amendment to the United States Constitution guarantees an accused the right against self-incrimination. The fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant. This applies to the penalty phase as well as to the guilt phase under article I, section 9, of the Florida Constitution.

*Id.* at 292. Significantly, in *Holton,* we concluded that where a defendant pleads not guilty and maintains his innocence at sentencing, article I, section 9 of the Florida Constitution prohibits the trial court from using that fact against him. *See id.*

To summarize, we have recognized that lack of remorse may not be inferred from a defendant's exercise of constitutional rights and that the Florida Constitution protects a defendant's right to

- 35 -

maintain his innocence at sentencing. The majority attempts to distinguish and isolate our precedent in *Pope* and *Holton* as applicable only in the capital context due to the consideration of aggravating factors in capital cases. *See* majority op. at 7-11. However, we have applied these principles in capital as well as noncapital cases. Our precedent in *Holton*, as well as *Pope* and *Mischler*, dictates that the protection against self-incrimination enumerated in article I, section 9 of the Florida Constitution extends to protect a defendant from being penalized for maintaining his innocence throughout his proceedings. The majority has not receded from this precedent, and I see no reason to depart from it.

Further, the district courts consistently apply the rule that a trial court violates the defendant's due process rights when it considers lack of remorse in sentencing where a defendant has maintained innocence throughout proceedings. *See, e.g., Jackson v. State*, 39 So. 3d 427, 428 (Fla. 1st DCA 2010) (listing cases that show as "established law" that a "statement made by the trial court [that] can reasonably be read only as conditioning the sentence, at least in part, upon [the defendant]'s claim of innocence" violates due process), *receded from by Davis*, 268 So. 3d at 965; *Whitmore v.*

*State*, 27 So. 3d 168, 171 (Fla. 4th DCA 2010) (listing a "long, unwavering line of cases" that hold that "a trial court violates due process by using a protestation of innocence against a defendant at sentencing"); *Jiles v. State*, 18 So. 3d 1216, 1216-17 (Fla. 5th DCA 2009) (reversing when the trial court noted at sentencing that the defendant "maintained his innocence at trial and during sentencing"); *Bracero v. State*, 10 So. 3d 664, 665-66 (Fla. 2d DCA 2009) (finding a due process violation when the defendant spoke at sentencing about his claims of innocence, alleging his conviction was motivated by conspiracy, and the trial court explicitly said the sentence was imposed in part due to his lack of remorse); s*ee also Corbitt v. State*, 220 So. 3d 446, 450-54 (Fla. 5th DCA 2016); *Donaldson v. State*, 16 So. 3d 314, 314 (Fla. 4th DCA 2009); *Soto v. State*, 874 So. 2d 1215, 1217 (Fla. 3d DCA 2004).

The district courts rightly recognize that not only is this rule compelled by our precedent, but it is also vital to the exercise of a defendant's constitutional rights. *See, e.g.*, *Catledge v. State*, 255 So. 3d 937, 940 (Fla. 1st DCA 2018) ("The stated reason for the general rule . . . is to ensure that a defendant is not unfairly punished for his plea of not guilty and the exercise of his

constitutional rights to remain silent and to proceed to a jury trial." (quoting *Corbitt*, 220 So. 3d at 450-51)), *receded from by Davis*, 268 So. 3d at 965; *Allen v. State*, 211 So. 3d 48, 54 (Fla. 4th DCA 2017) ("Allowing a sentencing court to penalize a defendant for not admitting guilt after a conviction or adjudication would jeopardize various rights attached to these post-trial processes and chill a defendant's right to remain silent."); *Green v. State*, 84 So. 3d 1169, 1172 (Fla. 3d DCA 2012) ("When a defendant chooses to remain silent at a sentencing hearing, and the trial court regards this silence as a lack of remorse or a failure to accept responsibility, it causes an impermissible chilling effect upon a defendant's due process rights, and cannot serve as a constitutionally permissible sentencing consideration."); *Gilchrist v. State*, 938 So. 2d 654, 657-58 (Fla. 4th DCA 2006) ("When a court predicates the length of a sentence on the defendant's failure to show any inclination toward repentance, the court violates the defendant's right not to be required to incriminate himself."). I concur and find that our precedent compels a different result than the one reached by the majority and the First District below.

Here, in sentencing, the trial court expressly considered Davis' refusal to take responsibility: "*You still fail to take any responsibility for your actions.* And considering your history here, *your failure to take any responsibility*, the nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years in the Department of Corrections, which is the statutory maximum." (Emphasis added.) Davis' due process rights and right against self-incrimination were violated by being punished at sentencing for not admitting his guilt. The plain language of article I, section 9 supports this: "No person shall be deprived of life, liberty or property *without due process of law*, or be twice put in jeopardy for the same offense, *or be compelled in any criminal matter to be a witness against oneself*." (Emphasis added). According to Justice Grosshans' concurring opinion, because Davis voluntarily spoke, he waived his rights to due process and against self-incrimination. Concurring op. at 24-25. However, simply because Davis chose to speak and maintain his innocence does not mean he should be punished for the failure to admit guilt. Accepting responsibility is an admission of guilt and punishing someone for the failure to admit guilt is a violation of due process and the right against self-

incrimination. If law enforcement cannot coerce an admission of guilt from a defendant without violating due process, *see Wilson v. State*, 242 So. 3d 484, 491 (Fla. 2d DCA 2018) (explaining that the Florida Constitution prohibits the admission of governmentally compelled statements), a court cannot likewise coerce an admission of guilt from a defendant.

The judicial process, which is grounded on constitutional due process, protects a defendant's right to maintain innocence and does not punish a defendant for doing so. Moreover, this due process protection extends beyond the defendant being found guilty at the trial court level. Indeed, as Justice Labarga notes in his separate dissenting opinion, our judicial proceedings include appeals from trials that are occasionally overturned and lead to the defendant ultimately being released. A defendant's right to maintain his or her innocence remains paramount in these proceedings.

The majority relies on *United States v. Grayson*, 438 U.S. 41 (1978), to support its assertion that "the sentencing judge here was entitled to consider testimony that indicated the defendant's unwillingness to accept the truth and to take responsibility for his

own conduct." Majority op. at 21. However, I disagree that *Grayson* is relevant to the issue presented in this case. In *Grayson*, the trial court ruled that "*it is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so.*" 438 U.S. at 44 (emphasis in original). No such ruling was made by the trial court in this case. Instead, the trial court improperly considered lack of remorse in its sentencing. There is a distinct difference between the consideration of the defendant's false testimony during trial based on a fabricated defense and the consideration of the defendant's lack of remorse when the defendant maintains his innocence at sentencing. The federal circuit court cases cited by Justice Grosshans' concurring opinion are distinguishable. Concurring op. at 25-26. The federal sentencing framework differs from Florida's framework in numerous ways, including the express authorization to consider all relevant information at sentencing and a downward adjustment provision that provides guidance on how to demonstrate remorse. *See* 18 U.S.C. § 3661 (2018) ("No limitation shall be placed on the information concerning the background, character, and conduct of

a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S. Sentencing Guidelines Manual § 3E1.1 (U.S. Sentencing Comm'n 2018) (explicitly permitting a court to decrease a defendant's sentence "if the defendant clearly demonstrates acceptance of responsibility for his offense").

The First District found that the Criminal Punishment Code (CPC) authorizes a consideration of lack of remorse at sentencing, but this assertion is incorrect for two reasons. First, the CPC does not explicitly authorize consideration of lack of remorse when sentencing within the range. Chapter 921, Florida Statutes, authorizes a trial court to impose a sentence lower than the minimum sentence if "[t]he offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse." § 921.0026(2)(j), Fla. Stat. (2019). This provision is not a blanket authorization to consider remorse in all circumstances, but instead only expressly authorizes a court to depart from the minimum sentence if a defendant has *shown remorse*. Remorse and lack of remorse, however, are shown differently. As we observed in *Pope*, "[u]nfortunately, remorse is an

- 42 -

active emotion and its absence, therefore, can be measured or inferred only from negative evidence." 441 So. 2d at 1078. Moreover, it does not necessarily follow that a factor the Legislature intended for consideration in downward departures should be considered when sentencing within the range. We may not read more into the statute than is apparent from the plain text. Accordingly, this provision does not authorize consideration of lack of remorse when sentencing within the statutory range.

Second, even if the CPC authorized a court to consider that a defendant has maintained his innocence throughout proceedings, it would run afoul of the Florida Constitution. As explained above, we have recognized a constitutional right to maintain innocence and to not have the exercise of that right used to a defendant's detriment. Even with legislative authorization, we are not permitted to violate rights the people of Florida have sought to protect through constitutional amendment. *See Coleman v. State ex rel. Race*, 159 So. 504, 507 (Fla. 1935) ("The Legislature is the creature of the Constitution and can never be superior in powers to the will of the people as written by them in the Constitution.").

The majority states that the trial judge did not need to articulate any reason for imposing the maximum sentence. *See* majority op. at 12. However, the trial judge expressly articulated the reason in this case. A plain reading of the sentencing transcript shows that the trial judge relied on Davis' claim of innocence. In his allocution, Davis maintained that he was innocent and that his conviction was based on conspiratorial actions by the police and deficient legal representation. The trial judge then admonished Davis for failing to take responsibility and sentenced him to the statutory maximum because he had failed to take responsibility. The trial judge improperly considered Davis' exercise of his constitutional right to maintain his innocence at sentencing under this Court's precedent, thereby violating article I, section 9 of the Florida Constitution.

## III. CONCLUSION

For the above reasons, I would answer the rephrased certified question in the affirmative, quash the First District's decision, and hold that a trial court violates a defendant's constitutional rights to due process and against self-incrimination where it considers that

he has maintained his innocence at sentencing and penalizes him for that fact.

I respectfully dissent.

LABARGA, J., concurs.

LABARGA, J., dissenting.

I wholeheartedly concur with Justice Polston's dissent and could not disagree more strongly with the majority's interpretation, which penalizes defendants who maintain their innocence throughout their trial and sentencing hearing. Curiously, the majority reached its broad interpretation although the text of chapter 921, Florida Statutes, does not expressly permit the consideration of a defendant's lack of remorse. Nor should it, for reasons well explained in Justice Polston's dissent.

I, also, am unpersuaded by the majority's attempt to distinguish Davis's noncapital case from capital cases where this Court has long held that the lack of remorse is not an appropriate sentencing consideration.

Indeed, I find that Florida's capital cases provide important context here, and one needs to look no further than the thirty exonerations from Florida's death row—the most of any state in our

nation.  *Death Penalty Information Center,*

https://deathpenaltyinfo.org/state-and-federal-info/state-by-

state/florida (last visited Oct. 4, 2021).  A defendant's adherence to

a claim of innocence is not always borne of a stubborn refusal to

admit the truth.  Sometimes, people convicted by juries are actually

innocent.

Application for Review of the Decision of the District Court of Appeal
Certified Great Public Importance

     First District – Case No. 1D17-165

     (Leon County)

Jessica J. Yeary, Public Defender, and Lori A. Willner, Assistant
Public Defender, Second Judicial Circuit, Tallahassee, Florida,

     for Petitioner

Ashley Moody, Attorney General, Trisha Meggs Pate, Bureau Chief,
and Benjamin L. Hoffman, Assistant Attorney General, Tallahassee,
Florida,

     for Respondent